IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHRISTOPHER CHAVEZ,

      **Plaintiff,**

v.                                                                          Case No. 20-CV-00812 KWR/SMV

ABEL RENTERIA, JOHN DOE 1,
CHRISTOPHER TURBOW, CARLOS SAENZ,
DANIEL BLANCO, in their individual capacities,
ESTEVAN FLORES, in his official capacity,
NEW MEXICO CORRECTIONS
DEPARTMENT.

      **Defendants.**                                                   **<u>Jury Trial Requested</u>**

## <u>FIRST AMENDED COMPLAINT FOR DAMAGES FOR INJURIES, CIVIL RIGHTS VIOLATIONS AND NEW MEXICO TORT CLAIMS</u>

Plaintiff Christopher Chavez, by and through counsel Paul M. Linnenburger and Kate S. Thompson of Rothstein Donatelli LLP, brings the following complaint for damages against Defendants pursuant to the Eighth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, the New Mexico Tort Claims Act, NMSA 1978, § 41-4-1 *et seq*., and the common law and states as follows:

### <u>INTRODUCTION</u>

In New Mexico and across the globe, prison gangs are a source of ongoing violence. Thus, New Mexico, like all jurisdictions, works hard to convince inmates to avoid and/or disassociate with prison gangs. In doing so, the State undertakes a solemn obligation to ensure

these inmates are not subject to the most vicious attacks, often reserved for those who have disassociated. This case is about the State of New Mexico consciously disregarding that obligation and unnecessarily endangering the physical safety of Plaintiff Christopher Chavez in the process with tragic and disfiguring consequences for Plaintiff.

Plaintiff was, until recently, an inmate in the New Mexico Corrections Department. During his time in prison, Plaintiff renounced his association with a dangerous prison gang known as the "Burqueños." His dissociation from this gang almost ten years ago made Plaintiff a target for violence and threats to his life. Despite the known and documented danger Plaintiff was in, the Defendants moved Plaintiff to Southern New Mexico Correctional Facility and housed him in a pod with Burqueños members, directly adjacent to another pod housing a leader of the Burqueños, a man whom had already attacked Plaintiff before and was listed as an enemy in Plaintiff's inmate file. Plaintiff immediately notified his unit manager, Defendant Renteria, that he was in danger, but nothing was done.

Soon after, that danger came to fruition. A member of the Burqueños in Plaintiff's pod microwaved a cup of water to boiling, threw the boiling water in Plaintiff's face while he was on the phone, and then attacked him. Plaintiff sustained severe injuries, his insides burned and his skin peeling off with his clothing. An airlift to Albuquerque for treatment was required and Plaintiff sustained lasting permanent damage to his body. When Plaintiff was healed enough to finally be transferred from a prison medical unit, Defendants not only sent him back to the known dangers of SNMCF, but they placed him right back in that same pod.

## PARTIES

1.      Plaintiff Christopher Chavez is a resident of Bernalillo County, New Mexico. During all times relevant to this Complaint, Plaintiff was an inmate at the Southern New Mexico Correctional Facility (SNMCF). Plaintiff is no longer in custody.

2.      Defendant Abel Renteria is a corrections officer employed at SNMCF. Upon information and belief, Defendant Renteria is a captain and unit manager for SNMCF. Upon information and belief, Defendant Renteria is a resident of Doña Ana County. At all times material to this Complaint, Defendant Renteria was acting under color of state law and within the scope of his employment. In connection with Plaintiff's § 1983 claims, Defendant Renteria is sued in his individual capacity.

3.      Defendant John Doe 1[1] is a direct line supervisor for the pod Plaintiff was housed in at SNMCF and is an employee of SNMCF. Defendant John Doe 1's responsibilities include managing inmate movement and housing assignments. Defendant John Doe 1 has supervisory and decision-making authority over inmate movement and housing assignments, including the placement of Plaintiff in pod 4B at SNMCF. At all times material to this Complaint, Defendant John Doe 1 was acting under color of state law and within the scope of his employment. In connection with Plaintiff's § 1983 claims, Defendant John Doe 1 is sued in his individual capacity.

4.      Defendant Christopher Turbow and Defendant Carlos Saenz are a Housing Captains for SNMCF. Defendants Turbow and Saenz's responsibilities include managing inmate movement and housing assignments.  Defendants Turbow and Saenz's have supervisory and

---

[1] The identity of John Doe 1 is presently unknown. Plaintiff acknowledges that this defendant may be Jane Doe and is using the pseudonym John Doe to ease possible confusion.

decision-making authority over inmate movement and housing assignments, including the placement of Plaintiff in pod 4B at SNMCF. At all times material to this Complaint, Defendants Turbow and Saenz were acting under color of state law and within the scope of their employment. In connection with Plaintiff's § 1983 claims, Defendants Turbow and Saenz are sued in their individual capacity.

5.      Defendant Daniel Blanco is an employee of the New Mexico Correction Department within the Security Threat Intelligence Unit (STIU) in the position of Security Threat Intelligence Unit Coordinator. Upon information and belief, Defendant Blanco is a resident of Doña Ana County. STIU is responsible for the identification, monitoring, and management of prison and street gang members incarcerated in New Mexico's prison system, including SNMCF. Defendant Blanco's responsibilities include ensuring that inmates with current and former gang affiliations are protected from known rivals or enemies when housing assignments are made. At all times material to this Complaint, Defendant Daniel Blanco was acting under color of state law and within the scope of his employment. In connection with Plaintiff's § 1983 claims, Defendant Daniel Blanco is sued in his individual capacity.

6.      Defendant Estevan Flores, upon information and belief, was at all times material hereto a resident of Doña Ana County, New Mexico and employed as the acting warden of SNMCF. Upon information and belief, at all times material hereto, Defendant Flores was responsible for the policies, practices, and customs of SNMCF. Upon information and belief, Defendant Flores was also responsible for the screening, hiring, training, retention, supervision, discipline, counseling, and control of SNMCF's correctional officers, staff, contractors, and agents. Upon information and belief, at all times material hereto, Defendant Flores was the final decision and policy-maker for SNMCF, and supervised its operation and management on a daily

4

basis. Upon information and belief, as the warden in charge of SNMCF's overall operation and daily management, Defendant Flores was responsible for the implementation of, and adherence to, SNMCF's policies, procedures, and customs. Upon information and belief, Defendant Flores has decision-making authority over inmate movement and housing assignments. At all times material hereto, Defendant Flores was acting under color of law and within the scope of his duties.  In connection with Plaintiffs' § 1983 claims, Defendant Flores is sued in his official capacity.

7.      Defendant New Mexico Corrections Department ("NMCD") operates the Southern New Mexico Correctional Facility located at 1983 Joe R. Silva Boulevard, Las Cruces, NM 88004. NMCD is responsible for the management and the care of the inmates housed at SNMCF. NMCD is a governmental entity within the State of New Mexico and local public body as those terms are used in NMSA 1978, § 41-4-3(B) and (C). At all times material to this Complaint, Defendant NMCD was the employer of the individual defendants.

## JURISDICTION AND VENUE

8.      Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

9.      All of the material acts and omissions alleged herein occurred in the State of New Mexico.

10.      This Court has original jurisdiction over Plaintiff's claims under Art. VI, § 13 of the New Mexico Constitution.

11.      Venue in this district is proper under NMSA 1978, § 41-4-18.

12.      This Complaint is timely pursuant to NMSA 1978, § 41-4-15 and 42 U.S.C. § 1988.

13.     All of the acts complained of herein which constitute the basis for liability on the claims brought pursuant to the New Mexico Tort Claims Act come within the scope of the waivers of immunity contained within the act.

14.     Plaintiff gave written notice of the claims contained herein pursuant to the New Mexico Tort Claims Act in compliance with the requirements of the act, NMSA 1978, § 41-4-16.

15.     All notice requirements under the New Mexico Tort Claims Act were properly complied with because all applicable Defendants had actual notice within ninety (90) days of the events that gave rise to the claims brought forth herein.

## FACTUAL ALLEGATIONS

16.     Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

17.     Plaintiff Christopher Chavez spent a considerable portion of the last two decades in the custody of the New Mexico Corrections Department.

18.     During Plaintiff's incarceration, he had been affiliated with the prison gang Burqueños.

19.     The Burqueños, also known as Burque or Burque Boys, is known to Defendants as a security threat group (STG).

20.     The New Mexico Corrections Department very strongly encourages inmates affiliated with a security threat group to dissociate therefrom. Said encouragement includes the express or implied promise of protection of the inmate if they so dissociate.

21.     While Plaintiff was incarcerated, he dissociated from the Burqueños.

22.      Plaintiff's dissociation from the Burqueños has endangered his safety.

6

23.     Defendants are aware that dissociation from a security threat group endangers the safety of an inmate and makes them a target for continuing violent attacks if they are not protected and separated from members of that security threat group.

24.     During Plaintiff's incarceration, another inmate and member of the Burqueños, Michael Padilla, lodged accusations against Plaintiff that endangered his safety.

25.     Plaintiff was repeatedly targeted by members of the Burqueños following the allegations of Michael Padilla.

26.     The New Mexico Department of Corrections maintains a Special Alert Card Enemy Information, commonly referred to as an "enemies list", for all inmates. Such enemy information is used by prisons to keep certain inmates away from each other to ensure their safety and security. An "enemies list" provides a warning to individuals within the Department of Corrections, including Defendants, that an inmate may be endangered if they are housed in the same facility as particular other inmates.

27.     In 2012, following an attack against Plaintiff by members of the Burqueños prison gang, Plaintiff requested Michael Padilla and three other inmates involved in the attack on him be placed on his "enemies list."

28.     Padilla was listed on Plaintiff's Special Alert Card Enemy Information.

29.     In 2013, while at Northeast New Mexico Detention Facility, Plaintiff was placed in involuntary inmate protection due to information from confidential informants that younger Burqueños had placed a "hit" on him, meaning his physical safety and life were in danger from the Burqueños.

30.     Plaintiff was again attacked by another inmate in 2017 and advised, as documented in his inmate file, that he continued to be targeted by the Burqueños.

31.     For unknown reasons, on or about July 23, 2019, shortly prior to the completion of his prison sentence, Plaintiff was moved to SNMCF.

32.     Upon information and belief, Defendants Renteria, John Doe 1, Christopher Turbow, and Carlos Saenz, and Daniel Blanco managed and decided on the placement of Plaintiff in pod 4B at SNMCF.

33.     Upon information and belief, as unit manager for pod 4B, Defendant Renteria had supervisory and decision-making authority over inmate housing assignments in his unit, including this pod.

34.     Upon information and belief, as direct line supervisor for pod 4B, Defendant John Doe 1 had supervisory and decision-making authority over inmate housing assignments, including this pod.

35.     Upon information and belief, as Housing Captains for pod 4B, Defendants Christopher Turbow and Carlos Saenzhad supervisory and decision-making authority over inmate housing assignments, including this pod.

36.     Upon information and belief, Defendant Daniel Blanco, as employee of the New Mexico Correction Department within the Security Threat Intelligence Unit (STIU, was responsible for ensuring that inmates, including Plaintiff, with current and former gang affiliations are protected from known rivals or "enemies" when housing assignments are made.

37.     Despite the documented and known threat and danger to Plaintiff's safety posed by the Burqueños prison gang, Defendants Renteria, John Doe 1, Christopher Turbow, Carlos Saenz, and Daniel Blanco decided and/or approved of Plaintiff's assignment to pod 4B of SNMCF with members of the Burqueños and within the immediate visible vicinity of a documented enemy of Plaintiff, Michael Padilla.

38.     Upon information and belief, Defendant Renteria approved the reclassification form for Plaintiff and chose or approved Plaintiff's placement in pod 4B.

39.     Upon information and belief, inmates assigned to pod 4B are able to see inmates assigned to pod 4A and receive notes passed from inmates assigned to pod 4A during recreation periods.

40.     Shortly after arriving at SNMCF, Plaintiff saw that inmate Michael Padilla was in 4A.

41.     Plaintiff knew that Padilla's proximity to him posed a danger to his health and safety.

42.     Plaintiff also saw that other inmates in the Burqueños prison gang were housed in the pod Plaintiff was assigned, and knew that his proximity to these gang members posed a danger to his health and safety.

43.     Defendant Renteria, John Doe 1, Christopher Turbow, and Carlos Saenz, and Daniel Blanco were, or should have been, aware of Plaintiff's gang renunciation, as well as the specific threat Michael Padilla and other current members of the Burqueños posed to Plaintiff's safety, when approving Plaintiff's placement in pod 4B.

44.     Upon information and belief, in addition to the specific violent history between Padilla and Plaintiff, Defendants also knew or suspected that Padilla currently held a leadership position within the Burqueños prison gang.

45.     On or about August 1, 2019, shortly after Plaintiff arrived at SNMCF and was placed in pod 4B, Plaintiff notified the unit manager Defendant Renteria in writing that he was in danger of physical violence from the Burqueños due to the presence of Padilla in the neighboring pod as Padilla had authority within the Burqueños prison gang to order the other Burqueños

9

members within Plaintiff's own pod to violently attack Plaintiff. Plaintiff requested to be moved to another pod for his safety.

46.     Plaintiff knew from his time as an inmate within the prison system, and Defendant Renteria and the remaining Defendants surely knew from their time as correctional officers and/or in prison administration, that once a known enemy with gang affiliations like Padilla saw or became aware that Plaintiff was nearby, a hit would be ordered.

47.     Despite this notice, neither Defendant Renteria nor the remaining Defendants acted to remove Plaintiff from the pod or otherwise take any action to protect Plaintiff. While Padilla was subsequently moved, the damage was already done as Padilla knew Plaintiff's location in the prison with other members of the Burqueños.

48.     On August 5, 2019, Plaintiff was on the phone in his pod when he was approached by Joshua Garcia.

49.     Joshua Garcia was another inmate at SNMCF and a member of the Burqueños.

50.     Immediately before he approached Plaintiff, Garcia had boiled a cup of water within the pod's microwave.

51.     Without warning, and in order to both seriously injure and subdue Plaintiff, Garcia threw the cup of boiling water into Plaintiff's face, head and upper torso as Plaintiff spoke into the telephone.



52.     Garcia then attacked Plaintiff.

53.     Plaintiff—in shock from the boiling water and fearing for his life—defended himself from Garcia's attack, and was eventually able to pin Garcia to the ground in an effort to cease the attack.

54.     After considerable delay, control officer Daniel Apodaca fired a drag stabilized bean bag round at Plaintiff and Garcia from a window on the second floor looking into the pod's communal area, hitting Plaintiff.

55.     After Officer Apodaca fired, Plaintiff distanced himself from Garcia.  Officer Apodaca fired another bean bag round at Plaintiff, hitting him for a second time.

56.     When interviewed by New Mexico State Police about the incident, Garcia stated that "It (meaning the attack) had to be done. It was a long time coming." This is an apparent reference to planned gang violence against Plaintiff.

57.     Upon information and belief, Padilla ordered Garcia to attack the Plaintiff.

58.     Plaintiff sustained serious injuries, including severe burns to his face, neck, chest, and shoulders. The burns suffered by Plaintiff were external and internal as the boiling water also entered his open mouth and esophagus while he spoke on the phone.

59.     Plaintiff, whose adrenaline was high as he was being attacked, did not initially realize the severity of the burn injuries.

60.     After the incident, when he began to pull his wet shirt away from his body, however, he realized that his skin was peeling off of his body, stuck to the t-shirt.



Subject: inmate Chavez, Christopher #51860 (48-E103)
Involved in physical altercation with inmate Garcia, Joshua #77466 (48-E105)
Suffered  burns to chest from being assaulted  with hot water.
Date: 8/5/2019
Time: 5:40 pm
Photo taken by Unit Manager Renteria

61.     Plaintiff was taken to Las Cruces Mountain View Regional Medical Center and then was airlifted to University of New Mexico Hospital for treatment of his injuries.

62.     Plaintiff suffered from first and second degree scald burns to his face, chest, and shoulders caused by the boiling hot water.

63.     The boiling water also entered Plaintiff's mouth and throat, burning his throat so severely that Plaintiff was unable to eat solid foods for some time and caused him pain when he talked. Plaintiff's weight dropped approximately 35 pounds in this time.

64.     During his recovery, Plaintiff suffered excruciating pain in the areas of his body that were burned.

65.     Plaintiff also received severe bruising to his leg and back from the less lethal ammunition.

66.     The attack caused permanent disfigurement and extensive scarring to Plaintiff's body. The burned areas continue to cause Plaintiff pain, in particular when exposed to the sun.

67.     The attack caused Plaintiff lasting psychological harm.

68.     Once released from the hospital, Plaintiff remained in the medical unit of NMCD's Regional Diagnostic Center (RDC) in Los Lunas, New Mexico for weeks. Plaintiff's injuries were such that they required treatment within the medical unit and Plaintiff had to be isolated from other inmates and staff to avoid infection of his wounds.

69.     Garcia was indicted for Aggravated Battery (Great Bodily Harm), § 30-3-5(C) for which he is currently awaiting trial.

70.     The actions and inaction of the Defendants in failing to protect the Plaintiff were the proximate cause of his serious injuries.

71.     Inexplicably, and in spite of requests to NMCD that he not be returned to SNMCF, when NMCD's medical professionals determined Plaintiff's burns were healed enough for Plaintiff to return to the general population, Plaintiff was returned to the same pod within SNMCF.

72.     When he arrived, Plaintiff learned that Padilla was still housed in SNMCF.

73.     Predictably, Plaintiff felt threatened by members of the Burqueños, also still housed in 4B.

74.     Plaintiff again expressed the concerns for his safety to Defendant Renteria.

75.     Upon learning that Plaintiff had been returned to SNMCF and housed within the same pod, Counsel for Plaintiff wrote to NMCD to express the very serious concerns for Plaintiff's safety resulting from this placement.

76.     NMCD responded that if Plaintiff had concerns for his safety, he could express them to his unit manager, Defendant Renteria.

77.     Of course, Plaintiff had already expressed concerns to unit manager Renteria, and the very correspondence NMCD was responding to made Plaintiff's concerns for his safety clear.

## COUNT I

**Plaintiff's Eighth and Fourteenth Amendment Claims Against Defendants Abel Renteria John Doe 1, Christopher Turbow, Carlos Saenz, and Daniel Blanco Under 42 U.S.C. § 1983 in their individual capacities**

78.     Plaintiff incorporates all preceding paragraphs as if fully stated herein.

79.     A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment.

80.     Prison officials have a constitutional duty to protect prisoners from violence at the hands of other prisoners.

81.     The right of prisoners to be protected from substantial risks of assault under the Eighth and Fourteenth Amendments was clearly established prior to August 5, 2019.

82.     Defendants Renteria, Doe 1, Turbow, Saenz, and Blanco were at all times material hereto, acting under color of state law.

14

83.     Defendants Renteria, Doe 1, Turbow, Saenz, and Blanco had the responsibility and affirmative duty to take reasonable measures to ensure Plaintiff's safety.

84.     The conditions of Plaintiff's incarceration at SNMCF in pod 4B posed a substantial risk of serious harm to his health and safety.

85.     Defendants Renteria, Doe 1, Turbow, Saenz, and Blanco were subjectively aware that placing and leaving Plaintiff in pod 4B with members of the Burqueños gang and in close proximity to Padilla endangered the health and safety of the Plaintiff.

86.     Defendant Renteria had actual notice that Plaintiff's safety was at risk when Plaintiff Chavez informed him days before the attack that he was in danger

87.     Defendant Renteria additionally had actual notice that Plaintiff's safety was at risk within his current housing assignment through the review of Plaintiff's inmate file, which made clear that Michael Padilla and anyone associated with the Burqueños gang would pose grave danger to Plaintiff when housed with or near him. As a captain and unit manager who chose or approved Plaintiff's placement in 4B and reviewed Plaintiff's inmate file, including his history of violent interactions with other inmates and enemies list, Defendant Renteria had notice of Plaintiff's history of being targeted by the Burqueños and his enemies list. The substantial risk to the Plaintiff's safety was documented and obvious.

88.     Defendant Renteria did not take any steps to remove Plaintiff from the dangerous situation. Defendant Renteria's response to this known risk was objectively unreasonable. By failing to act to alleviate the obvious and substantial risk to the Plaintiff's safety, Defendant Renteria recklessly disregarded this risk. Defendant Renteria acted with deliberate indifference in knowing of and disregarding the risk of serious harm to Plaintiff Chavez.

89.     Defendant Doe 1 was subjectively aware of the substantial risk of harm to Plaintiff's health and safety through his placement of Plaintiff in a pod with members of the Burqueños prison gang and in close proximity to a specific member of the Burqueño gang on Plaintiff's list of enemies. Plaintiff's history of being targeted by the Burqueños and his naming of Burqueño member Michael Padilla on his enemies list are well-documented in his inmate file. At least three different incidents in which Plaintiff was physically assaulted or was targeted by the Burqueños, including Padilla, are documented in his inmate file. His file also reflects Plaintiff's dissociation from the Burqueños and that he has been a target since. His file also reflects that Plaintiff requested Padilla be added to his enemies list based on a physical assault. The risk of serious harm in placing Plaintiff in close proximity to a known enemy and in a pod with members of the Burqueños was obvious. Defendant Doe 1, a direct line supervisor for Plaintiff's pod, had actual notice of this obvious risk in Plaintiff's file prior to choosing or approving Plaintiff's placement in this pod. By assigning Plaintiff to be confined with other inmates who endangered Plaintiff's safety, Defendant Doe 1 acted with deliberate indifference by recklessly disregarding an obvious and substantial risk of harm.

90.     Defendants Turbow and Saenz were subjectively aware of the substantial risk of harm to Plaintiff's health and safety through his placement of Plaintiff in a pod with members of the Burqueños prison gang and in close proximity to a specific member of the Burqueño gang on Plaintiff's list of enemies. As described above, the risk of serious harm in placing Plaintiff in close proximity to a known enemy and in a pod with members of the Burqueños was obvious and well-documented in Plaintiff's inmate file. Defendants Turbow and Saenz, Housing Captains for Plaintiff's pod or block, had actual notice of this obvious risk in Plaintiff's file prior to choosing or approving Plaintiff's placement in this pod. By assigning Plaintiff to be confined

with other inmates who endangered Plaintiff's safety, Defendants Turbow and Saenz acted with deliberate indifference by recklessly disregarding an obvious and substantial risk of harm.

91.     Defendant Blanco was subjectively aware of the substantial risk of harm to Plaintiff's health and safety through his placement of Plaintiff in a pod with members of the Burqueños prison gang and in close proximity to a specific member of the Burqueño gang on Plaintiff's list of enemies. As part of STIU, Defendant Blanco is responsible for identifying, monitoring, and managing prison gangs such as the Burqueños. Defendant Blanco was involved in deciding the custody and institutional assignments for Plaintiff Chavez which necessarily would involve review of the Plaintiff's inmate file. As described above, the risk of serious harm in placing Plaintiff in close proximity to a known enemy and in a pod with members of the Burqueños was obvious and well-documented in Plaintiff's inmate file. Defendant Blanco had actual notice of the obvious risk in Plaintiff's file prior to choosing or approving Plaintiff's placement in this pod. By assigning Plaintiff to be confined with other inmates who endangered Plaintiff's safety, Defendant Blanco acted with deliberate indifference by recklessly disregarding an obvious and substantial risk of harm.

92.     The deliberate indifference of these Defendants was a proximate cause of Plaintiff Chavez's severe injuries and subsequent suffering.

## COUNT II

**Plaintiff's Eighth and Fourteenth Amendment Claims Against Defendants Flores and NMCD Under 42 U.S.C. § 1983 in their official capacities**

93.     Plaintiff incorporates all preceding paragraphs as if fully stated herein.

94.     At all times material hereto, SNMCF was owned by the State of New Mexico and operated by Defendant NMCD.

17

95.     At all times material hereto, Defendant Flores served as Acting Warden for SNMCF and is sued in his official capacity. Defendant Flores is a policymaker of SNMCF.

96.     Defendants NMCD and Flores had a duty to ensure the practices, policies, or customs of SNMCF comport with the standards required by the United States Constitution, including for the health and safety of SNMCF inmates.

97.     Defendants NMCD and Flores, acting with deliberate indifference, either instituted or permitted a practice, policy, or custom in which a SNMCF inmate could be placed in housing units with inmates who posed a known danger to his safety.

98.     Defendants NMCD and Flores acting with deliberate indifference, either instituted or permitted a practice, policy, or custom in which security personnel could refuse to remove an inmate from a voiced and known threat to that inmate's safety.

99.     These policies, practices, or customs were the proximate cause of Plaintiff Chavez's injuries.

100.    These Defendants, acting with deliberate indifference, failed to take adequate measures to ensure that inmates are not placed in dangerous housing situations or are immediately removed upon a threat to their safety which comport with the standards the Constitution requires be provided to prisoners. This failure was a proximate cause of Plaintiff Chavez's injuries.

### COUNT III

**Plaintiff's Claims Against Defendants Abel Renteria, John Doe 1, Christopher Turbow, Carlos Saenz, and Daniel Blanco under NMSA 1978, § 41-4-12**

101.    Plaintiff incorporates all preceding paragraphs as if fully stated herein.

102.    Defendants Renteria, Doe 1, Turbow, Saenz, and Blanco's immunity is waived under the New Mexico Tort Claims Act, NMSA 1978 § 41-4-12. These Defendants are "law

enforcement officers" for purposes of the New Mexico Tort Claims Act, and at all times were acting in the course and scope of their duties.

103.    These Defendants engaged in intentional, negligent, grossly negligent, and reckless acts and omissions, without just cause or excuse, that these Defendants knew, or should have known, were reasonably expected to result in the bodily, physical, and emotional injuries suffered by Plaintiff Chavez.

104.    These Defendants engaged in acts and omissions which resulted in the assault, battery, and deprivation of rights, privileges, or immunities secured by the constitution and laws of the United States and New Mexico. *See* NMSA 1978, § 41-4-12.

105.    As described above, these Defendants were subjectively aware of the substantial danger posed to Plaintiff Chavez by his confinement in a pod with members of the Burqueños and in close proximity to a known enemy. This danger was well-documented and voiced by the Plaintiff shortly after his arrival at SNMCF.

106.    By disregarding this risk, Defendants Renteria, Doe 1, Turbow, Saenz, and Blanco breached duties of care owed to Plaintiff Chavez that resulted in the injuries and damages he suffered as set forth herein.

107.    Defendant NMCD is jointly and severally liable for all injuries and damages caused Plaintiff by the actions of its administrators and employees under the doctrines of vicarious liability and *respondeat superior*.

## COUNT IV

### Plaintiff's Claims Against Defendant NMCD under NMSA 1978, § 41-4-6

108.    Plaintiff incorporates all preceding paragraphs as if fully stated herein.

109.     The employees, officials, contractors, and agents of NMCD and SNMCF had a duty to act reasonably in order to avoid injury to Plaintiff Chavez arising from unsafe, dangerous, or defective conditions on property they operated, including their penal facilities.

110.     The employees, officials, contractors, and agents of NMCD and SNMCF had a duty to operate and maintain their facilities, including SNMCF, in a safe condition for the benefit of the prisoners housed there, including Plaintiff Chavez.

111.     The employees, official, contractors, and agents of NMCD and SNMCF further had a duty to exercise reasonable care to discover and prevent dangerous conditions caused by officials, employees, and inmates on its premises.

112.     Such supervision included the obligation to adopt and inculcate reasonable and proper procedures concerning the safe operation of their facilities, including appropriate policies and procedures regarding the safe housing of inmates, the effective review of inmate, STIU and other files prior to housing decisions, adequate staffing, classification, supervision, and provision of care, including adequate employee, agent, and contractor training, adequate monitoring and regulation of activity at penal facilities, and other such practices and procedures as are reasonably necessary to assure adequate safety in the operation and maintenance of their facilities in order to avoid unsafe, dangerous, or defective conditions on the premises.

113.     The employees, officials, and agents of NMCD and SNMCF breached the foregoing duties by, among other things:

   a.   negligently operating or maintaining the SNMCF prison facility in Las Cruces, New Mexico;

   b.   negligently allowing unsafe, dangerous, or defective conditions to exist;

    c.   negligently failing to adequately staff or supervise activities at the SNMCF prison facility in Las Cruces, New Mexico;

    d.   negligently failing to require adequate training and certification of employees, agents, and contractors at their penal facilities;

    e.   negligently failing to comply with state, national, and professional standards and guidelines for safe operation of their penal facilities.

114.    Plaintiff Chavez had been in the custody of NMCD for several years where his dissociation from the Burqueños and the physical assaults and threats against him by the Burqueños, including Padilla, were well-documented. The placement of Plaintiff Chavez in pod 4B at SNMCF and NMCD's failure to heed his warnings of the danger was unreasonable and breached its duty.

115.    The conduct of the employees, officials, contractors, and agents of NMCD, described above, were the proximate cause of the above-described assault on Plaintiff Chavez.

## DAMAGES

116.    Plaintiff incorporates all preceding paragraphs as if fully stated herein.

117.    As a direct and proximate result of the conduct of all Defendants,

    a)   Plaintiff Chavez endured severe physical pain and injuries resulting from the boiling water and physical force Joshua Garcia used against him as well as the bean bag rounds shot at him by the corrections officer. The injuries Plaintiff sustained required extensive medical treatment and resulted in permanent disfigurement of his body.

    b)   Plaintiff Chavez suffered, and continues to suffer, from emotional distress due to Defendants' acts and omissions as set forth herein.

c)   Plaintiff Chavez's Eighth and Fourteenth Amendment rights were violated as set forth herein.

d)   As a result of the above injuries, Plaintiff Chavez is entitled to recover an award of full compensatory damages in amounts to be determined by the jury at trial.

118.   Because the conduct of Defendants Renteria, Doe 1, Turbow, Saenz, and Blanco involved intentional misconduct, recklessness, gross negligence, or callous indifference to Plaintiff Chavez's rights, or because these Defendants' conduct was motivated by malice, evil motive, or intent, Plaintiff Chavez is entitled to recover awards of punitive and exemplary damages separately against Defendants Renteria, Doe 1, Turbow, Saenz, and Blanco under Plaintiff's § 1983 claims in amounts to be determined at the trial of this cause.

WHEREFORE, Plaintiff Chavez requests the following relief against Defendants:

A.     Awards of compensatory damages, as set forth above, against all Defendants, jointly and severally, for the Plaintiffs;

B.     Awards of punitive damages against Defendants Renteria, Doe 1, Turbow, Saenz, and Blanco jointly and severally, as set forth above;

C.     An award of prejudgment and post judgment interest on any amounts recovered for Plaintiff;

D.     With respect to all claims brought herein pursuant to 42 U.S.C. § 1983, the costs of bringing this action, including reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988;

E.     A declaration that Defendants violated Plaintiff Chavez's Constitutional rights under the Eighth and Fourteenth Amendment to the United States Constitution or such other equitable relief as the Court may deem appropriate;

F.      A trial by jury on all issues so triable; and

G.      Such other and further relief as the Court may deem appropriate under the

circumstances.

Respectfully submitted,

ROTHSTEIN DONATELLI LLP

*/s/ Kate S. Thompson 12/17/2020*
PAUL M. LINNENBURGER
KATE S. THOMPSON
500 4th St., NW, Suite 400
Albuquerque, New Mexico 87102
(505) 243-1443
plinnenburger@rothsteinlaw.com
kthompson@rothsteinlaw.com

*Attorneys for Plaintiff*

23