**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

CHRISTOPHER CHAVEZ,

       Plaintiff,

v.                                          Civ. No. 1:20-cv-00812 MIS/LF

ABEL RENTERIA; JOHN DOE 1;
CHRISTOPHER TURNBOW;[1] CARLOS SAENZ;
DANIEL BLANCO, in his individual capacity;
ESTEVAN FLORES, in his official capacity; and
NEW MEXICO CORRECTIONS DEPARTMENT,

       Defendants.

**MEMORANDUM OPINION AND ORDER
ON DEFENDANT ABEL RENTERIA'S
MOTION FOR SUMMARY JUDGMENT (ECF NO. 82)**

       THIS MATTER is before the Court on Defendant Abel Renteria's Motion for Summary Judgment. ECF No. 82. Plaintiff filed his Response, and Defendant Renteria filed his Reply. ECF Nos. 96, 125. Having considered the parties' submissions, the record, and the relevant law, the Court will grant the Motion in part and deny it in part.

**PROCEDURAL BACKGROUND**

       This is a case brought by Plaintiff, Christopher Chavez ("Plaintiff"), a former inmate housed at the Southern New Mexico Correctional Facility ("Southern"), against housing unit manager Defendant Abel Renteria ("Defendant Renteria") and other employees of the New Mexico Corrections Department ("NMCD"). Plaintiff has also sued NMCD itself.

---

[1] Defendant Turnbow is listed as "Christopher Turbow" in the First Amended Complaint. ECF No. 30. The person that filed a waiver of the service of summons is "Christopher Turnbow," however. ECF No. 40. The Court will refer to this Defendant as "Christopher Turnbow." The parties are advised to file the appropriate documents to address this discrepancy, if necessary.

Pertinent to the present Motion, Plaintiff alleges that Defendant Renteria committed violations of the Eighth and Fourteenth Amendments to the United States Constitution compensable under 42 U.S.C. § 1983 (Count I), as well as torts within the New Mexico Tort Claims Act's waiver of immunity for law enforcement officers, N.M. Stat. Ann. § 41-4-12 (1978) (Count III).[2] *See* ECF No. 30, ¶¶ 78–92, 101–107. Specifically, Plaintiff alleges that Defendant Renteria was deliberately indifferent to a substantial risk of Plaintiff being harmed by being housed with members of a dangerous prison gang known as the "Burqueños," and that, due to Defendant Renteria's indifference, a member of the Burqueños gang threw a cup of boiling water in Plaintiff's face, resulting in severe injury to Plaintiff. Plaintiff also alleges that as a "law enforcement officer" under the New Mexico Tort Claims Act ("NMTCA") (N.M. Stat. Ann. § 41-4-12 (1978)), Defendant Renteria negligently allowed Plaintiff to be housed with members of the Burqueños gang, resulting in the injury he sustained.

The present Motion, ECF No. 82, seeks summary judgment on all claims brought by Plaintiff against Defendant Renteria. Specifically, Defendant Renteria asserts qualified immunity, arguing that he did not violate Plaintiff's Eighth Amendment rights because he was not aware of facts from which the inference could be drawn that Plaintiff faced a substantial risk of serious harm.[3] He also argues that he is entitled to qualified immunity because, even assuming a constitutional violation occurred, the relevant law was not clearly established at the time of the alleged violation. Defendant Renteria also argues

---

[2] The remaining claims, which are listed under Count II and Count IV of the First Amended Complaint, do not apply to Defendant Renteria. *See* ECF No. 30 at 17, 19.

[3] *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

that he is not a "law enforcement officer" under the NMTCA, and that therefore governmental immunity has not been waived for tort claims brought against him as an employee of the State of New Mexico acting within the scope of his duties.

In response to the Motion, Plaintiff argues there is sufficient evidence showing that Defendant Renteria was aware of, and deliberately indifferent to, a substantial risk of serious harm to Plaintiff from the Burqueños gang. Plaintiff also argues that his Eighth Amendment right to inmate safety was clearly established, as applied to Defendant Renteria and the facts of this case. Further, Plaintiff argues that New Mexico's governmental immunity from tort claims has been waived under N.M. Stat. Ann. § 41-4-6 (1978) (waiver of immunity for negligent operation of any "building, public park, machinery, equipment or furnishings").[4] The Court will address each of Defendant Renteria's relevant arguments, and Plaintiffs' relevant responses thereto, in turn.

## FACTUAL BACKGROUND

The facts stated below are either undisputed or stated in the light most favorable to the nonmovant, for purposes of the present Motion:[5]

Plaintiff has spent much of the last two decades incarcerated in the custody of NMCD. ECF No. 82, UMF 1. While an inmate at various NMCD facilities, Plaintiff claimed

---

[4] In the First Amended Complaint, Plaintiff pleaded that N.M. Stat. Ann. § 41-4-12 (1978) (law enforcement exception to the NMTCA) applies to his claims against Defendant Renteria. *See* ECF No. 30 at 18–19. In his Response to the present Motion, Plaintiff now states that he "agrees that, at the time of the incident, § 41-4-12 did not apply to corrections officers responsible for inmates post-conviction." ECF No. 96 at 28. Therefore, Plaintiff has abandoned his argument (if any) that § 41-4-12 applies to Defendant Renteria.

[5] For purposes of the Motion for Summary Judgment, the Court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. *See* Standard for Summary Judgment section.

on multiple occasions that he was at risk of violence from members of the Los Padillas and Burqueños gangs, due to past physical altercations with, and threats from, members of these gangs. *See* ECF No. 96, UMFs x–z, dd(i)–(x).[6] Since at least 2011,[7] Plaintiff has experienced gang-related violence from, or physical altercations with, members of these gangs, including violent assaults on Plaintiff in 2011 and 2017. *Id.*, UMFs dd(iii), dd(vii). Also, in 2013, Plaintiff was placed in involuntary inmate protection due to information from confidential informants that younger members of the Burqueños gang had placed a "hit" on him, thus making him a target for future violence. *See id.*, UMF dd(v). The above-mentioned safety concerns were clearly noted in Plaintiff's inmate file and were known to various officials within NMCD. *See generally id.*, UMF dd. As of 2019 (the year of the injury claimed in this lawsuit), at least one notation in Plaintiff's inmate file reflected that this safety concern (i.e., the risk of violence from Los Padillas and Burqueños gang members) was unresolved. *See id.*, UMF z.

Within the NMCD system, prison gangs pose a significant threat to inmate health and safety, due to their illicit activities such as drug trafficking, extortion, and violence. *See, e.g.*, ECF No. 96-7 at 13–14 (referring specifically to the Burqueños gang). Gangs such as the Burqueños exert power and control over the prison population through the use of intimidatory tactics and violence. *Id.* In turn, inmate-on-inmate violence creates a

---

[6] All of the lettered facts presented by Plaintiff are part of Plaintiff's UMF 25. *See* ECF No. 96 at 7. The Court will refer to these facts by letter only.

[7] Plaintiff's "safety concerns" file reflects that in the years prior to his injury, Plaintiff claimed "all Los Padillas & Burqueno gang members as enemies" due to problems with Los Padillas gang members at several other NMCD facilities, and that he "had to fight or has been assaulted by members of both gangs at those facilities due to problem[s]." *See* ECF No. 98-3 at 2. Defendant Renteria has admitted that the Burqueños gang posed multiple risks, including inmate-on-inmate assaults. ECF No. 96-7 at 14.

threat to the overall safety and security of prison facilities. ECF No. 96, UMF n. NMCD has classified the Burqueños gang as a "disruptive threat group" ("DTG"), which is a group involved in criminal activities within the prison facility. *See* ECF No. 96-7 at 13–14. The Burqueños gang is the largest DTG within the NMCD system. ECF No. 96-7 at 13. NMCD has a policy encouraging inmates affiliated with DTGs to "dissociate" from, or renounce their affiliation with, these groups. ECF No. 98-9 at 6. Dissociation from a DTG endangers the safety of an inmate, putting the inmate at risk of violent attacks by members of DTGs. ECF No. 98, UMF k; ECF No. 98-8 at 3; ECF No. 98-9 at 7–8. During his incarceration, Plaintiff was affiliated with the Burqueños gang. ECF No. 82, UMFs 1–2. Plaintiff had sought to dissociate from the Burqueños gang "many times" in the years preceding his injury, including a request in 2017 after Plaintiff was involved in a fight with another inmate. *See* ECF No. 82, UMF 3; ECF No. 126-6 at 2. Plaintiff's concerns regarding the Burqueños gang, as well as another prison gang called Los Padillas, were well documented in the Corrections Management Information System ("CMIS"), an electronic database of prisoner records. *See id.*, UMF 4.

Prior to being transferred to Southern, where Plaintiff's injury occurred, Plaintiff was in the custody of NMCD at the Regional Diagnostic Facility, which is part of the Central New Mexico Correctional Facility. ECF No. 82, UMF 7. On July 23, 2019, he was transferred to Southern. *Id.* After his transfer to Southern, he was placed into housing Pod 4B, which was part of a "Level IV" housing unit consisting of inmates who were monitored more closely and were considered a higher threat level than other inmates. ECF No. 96, UMF c; ECF No. 96-7 at 5–6. Immediately after being transferred, he spent approximately seven days in "orientation" and was confined to his cell, leaving only to

shower, utilize the phone, and attend to basic necessities. *Id.*, UMF 10; *see also* ECF No. 96-7 at 15–16 (during orientation inmates leave their cells only when the rest of the inmates are locked down and secured).

During the time period relevant to this lawsuit, Defendant Renteria was the unit manager for housing Pod 4B, where Plaintiff was assigned. ECF No. 96-7 at 2, 10. As a unit manager, he oversaw daily operations within the housing unit. *Id.* He was aware that prison gangs such as the Burqueños posed a risk of serious harm due to inmate-on-inmate violence and manipulation, including stabbings, physical assaults, and extortion. ECF No. 96, UMFs k–m. He was also aware that inmates were at risk of serious harm if not kept at a distance from a listed enemy. ECF No. 96-7 at 8. He made an effort to get to know the inmates in his pod, including their gang activity. ECF No. 96, UMF ee.

On Plaintiff's last day of orientation, July 31, 2019, he met with SNMCF's Transitional Accountability Plan ("TAP") Committee to discuss his transition to living in Pod 4B. ECF No. 82, UMF 11. Defendant Renteria was the chair of the TAP Committee. ECF No. 96-7 at 4. As a regular part of a committee meeting, it was Defendant Renteria's practice to review an inmate's CMIS information, including the inmate's disciplinary history, charges, gang affiliation, enemies (including specific safety concerns),[8] and

---

[8] In his Statement of Facts, ECF No. 96 at 9, Plaintiff alleges that Defendant Renteria reviewed Plaintiff's specific "safety concerns," which clearly showed that he was at risk of violence from the Burqueños gang. *See id.*, UMFs t–bb; ECF No. 96-9 at 1–2. On the other hand, Defendant Renteria argues that the evidence does not support the fact that he actually viewed Plaintiff's specific safety concerns. ECF No. 129 at 9. Viewing the evidence in the light most favorable to Plaintiff, specifically the evidence referencing the types of information Defendant Renteria reviewed during the TAP committee meeting, the Court finds that a reasonable juror could conclude that Defendant Renteria actually reviewed Plaintiff's specific safety concerns simultaneously with Plaintiff's "enemies list," given the context in which his deposition testimony was made. *See, e.g.*, ECF No. 96-7 at 3 (Defendant Renteria reviewed CMIS information, including enemies list, as part of TAP Committee meeting); *id.* at 7 (referencing a "drop down of who that inmate claimed as an enemy," which is consistent with a review of the inmate safety concerns tab); ECF No. 96-9 at 1 (drop down enemies list for Christopher Chavez, corresponding with inmate safety

behavioral concerns. ECF No. 96-7 at 3. In Plaintiff's case, this included eight incidents of fighting, verbal abuse, or threats; one known enemy at Southern; suspected affiliation with two gangs; and administrative segregation for being "identified as leader of street gang [B]urque [B]oys" and "inmate protection."[9] ECF No. 125-6 at 1. During Plaintiff's committee meeting on July 31, 2019, he met with Defendant Renteria and went through his listed enemies. ECF No. 82, UMFs 12, 13; ECF No. 96, UMF o. After noting the listed enemies, Defendant Renteria explained that a listed enemy, inmate Michael Padilla, was in the compound but that Plaintiff would not have any physical interaction with Padilla. ECF No. 82, UMF 13.[10] Plaintiff had the opportunity to advise defendant Renteria of his safety concerns, and at that time, Plaintiff stated that Padilla was "out to get" him. *Id.*; ECF No. 96-2 at 6. During the meeting, Plaintiff called Padilla a "big ole' weenie" because Padilla sends other inmates to "do his business," i.e., to carry out orders of violence. ECF No. 82, UMF 13; ECF No. 96-2 at 6.[11] Defendant Renteria was familiar with Padilla, including his affiliation with the Burqueños gang, in particular a leader whom the younger

---

concerns); *id.* at 2 (safety concern referencing Plaintiff's claim of "all Los Padillas & Burqueno gang members as enemies"); *see also* ECF No. 98-1 (Defendant Turnbow testimony confirming that ECF No. 96-9 at 2 is a "screen that would pop up when you clicked on one of those inmate safety concerns" listed in ECF No. 96-9 at 1).

[9] The "CMIS information" referred to above is contained in Plaintiff's CBC Summary Review Report. *See* ECF No. 125-6. The Court finds that, when the evidence is viewed in the light most favorable to Plaintiff, Defendant Renteria admitted reviewing this report in CMIS. *See* ECF No. 96-7 at 3 (describing the types of CMIS information Defendant Renteria reviewed, which are consistent with the information contained in the CBC Summary Review Report).

[10] Defendant Renteria had responsibility over both Pod 4B (where Plaintiff and Garcia were housed) as well as Pod 4A (where Padilla was housed). ECF No. 96-7 at 6, 12. He also knew that Michael Padilla was on Plaintiff's enemy list. ECF No. 96, UMF f.

[11] Plaintiff also offers evidence that it was Defendant Renteria's practice to "rel[y] on inmates to raise safety concerns rather than acting on the documented safety concerns in their CMIS file." ECF No. 96, UMF ff (citing ECF No. 96-7 at 3–4). The Court finds that this fact is immaterial to the present Motion.

inmates looked up to. ECF No. 96-7 at 11–13. Although Plaintiff and Padilla were in separate housing units, they could see each other while outside for recreation. ECF No. 96-2 at 2, 6. Defendant Renteria was aware that inmates from Pod 4A and 4B could see each other. *Id.* Defendant Renteria was also aware that members of the Burqueños gang could communicate between different pods by hand sign and written communications called "kites." ECF No. 96-7 at 10, 14.

Padilla was the only named person at SNMCF that was listed on Plaintiff's enemies list in CMIS. ECF No. 84-6 at 1. However, in a separate list of safety concerns, also in CMIS, Plaintiff had claimed all members of the Burqueños gang as enemies. ECF No. 96-9 at 2. During the TAP Committee meeting, Defendant Renteria reviewed Plaintiff's enemies list and corresponding safety concerns in CMIS. *See* n.8 *supra*. The first listed safety concern reads as follows:

> CLAIMING ALL LOS PADILLAS & BURQUENOS GANG MEMBERS AS ENEMIES DUE TO THE PROBLEMS WITH LOS PADILLAS GANG MEMBERS AT [various facilities] GCCF, LCCF & NENMDF, PNM SOUTH. INMATE CLAIMS TO HAD TO FIGHT OR HAS BEEN ASSAULTED BY MEMBERS OF BOTH GANGS AT THOSE FACILITIES DUE TO PROBLEM.

ECF No. 96-9 at 2.

In early August 2019, several inmates told Plaintiff that Padilla did not want him in housing Pod 4B, and that he "better go" (i.e., leave housing Pod 4B) because Padilla, through the use of kites, told them that he did not want Plaintiff residing in that housing unit. ECF No. 96-2 at 2–3. Sometime between August 1 and August 4, 2019, shortly after seeing Padilla in the yard at Southern, Plaintiff mailed a letter to Defendant Renteria,

expressing that he felt unsafe from Padilla. *Id.*[12] There is no indication in the record that Defendant Renteria acted on Plaintiff's concerns expressed in the August 2019 letter, or on the concerns Plaintiff expressed about Padilla during the TAP Committee meeting on July 31, 2019.

Despite the fact that he was not housed in the same unit as Padilla, Plaintiff was housed with other members of the Burqueños gang, who (as already stated) were able to communicate with Padilla through the use of kites. ECF No. 96-4; ECF No. 96-5; ECF No. 96-2 at 2–3. This included Joshua Garcia, a suspected member of the Burqueños gang with a history of violence. ECF No. 96-3 at 3–8; ECF No. 96-4; ECF No. 96-5. On August 5, 2019, Plaintiff was on the phone in his pod when he was approached by Garcia. ECF No. 96-5. Garcia was carrying a cup filled with scalding hot water, which he had retrieved from the microwave, and he threw the substance onto Plaintiff, injuring him. *See* ECF No. 96-2 at 4; ECF No. 96-5 at 1. As a result of being doused with the hot water, Plaintiff suffered first- and second-degree burns to his face, neck, chest, and shoulders. *See* ECF No. 96 at 5; ECF No. 96-2 at 7; ECF No. 96-5 at 2–4. He also suffered internal injury to his esophagus. ECF No. 98-11 at 7. Plaintiff was burned so severely that he was unable to eat solid foods, and his weight dropped 40 pounds in about a month. ECF No. 98-11 at 7. Plaintiff also experienced long-lasting changes to his skin, including increased sensitivity, changes in skin color, pain in the injured areas, and psychological harm. ECF No. 98-11 at 6. He also suffered bruising to his legs from bean bag rounds

---

[12] Plaintiff states that at least a day before his injury, he mailed the letter to Defendant Renteria, expressing that he felt unsafe from Padilla. ECF No. 96 at 4; ECF No. 96-2 at 2–3. Defendant Renteria disputes that the letter was mailed or received. ECF No. 82 at 4. It is unclear whether Defendant Renteria could have received the letter prior to Plaintiff's injury. Given that there is other evidence of Defendant Renteria's subjective knowledge of the risk of harm to Plaintiff, this dispute is immaterial.

that were deployed against him by prison guards as a result of the encounter with Garcia. ECF No. 98-5 at 1–2. After the injury, Plaintiff was transported to a hospital in Las Cruces, then to a burn unit Albuquerque, for treatment. ECF No. 98-11 at 6.

Prior to Plaintiff's injury, Garcia's inmate file reflected a history of at least one other gang-related assault on a fellow inmate, as well as a history of violence. *See* ECF No. 96-3 at 3–8. Garcia had also warned Plaintiff before the assault, "Mike [Padilla] don't want you in this unit." ECF No. 96-2 at 5; ECF No. 98-11 at 4. During an interview after the assault, Garcia would not say anything other than, "It had to be done, it was a long time coming." ECF No. 96-5 at 1.

## LEGAL STANDARDS

### I.      Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure allows summary judgment when the evidence submitted by the parties establishes that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the nonmovant is required to put in the record facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52 (1986). A fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id.* at 248.[13]

---

[13] Several of the facts presented by the parties are immaterial. The Court acknowledges that some of the facts, although immaterial, are helpful for the purpose of providing background and context of the

The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988). Rather, the nonmovant has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [their] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (quoting *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998)) (internal quotation marks omitted).

It is not the Court's role to weigh the evidence or assess the credibility of witnesses in ruling on a motion for summary judgment. *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012). Rather, the Court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. *See Hunt v. Cromartie*, 526 U.S. 541, 551–52 (1999); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). However, summary judgment may nevertheless be granted where "the evidence is merely colorable, or is not significantly probative." *Liberty Lobby, Inc.*, 477 U.S. at 249–50.

## II.     Qualified Immunity Standard

The doctrine of qualified immunity protects government officials from suit unless their actions violate a "clearly established" statutory or constitutional right. *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (quoting *Kisela v. Hughes*, 138 S. Ct.

---

case. If material, the Court will apply these facts, as necessary, in the Analysis section of this Memorandum Opinion and Order.

1148, 1152 (2018)). A right is clearly established only when, at the time of the challenged conduct, "the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014).

"A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quoting *Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006) (internal quotation marks omitted)); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 289–90 (2018) ("The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." (internal citations and quotation marks omitted)). Although the plaintiff is not required to identify a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela*, 138 S. Ct. at 1152 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). Clearly established law cannot be defined "at a high level of generality"; rather, it must be particularized to the facts of the case. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011); *see Anderson v. Creighton*, 483 U.S. 635, 640 (1987). But "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007)). The dispositive question is whether the unlawfulness of the official's actions was apparent in light of pre-existing law. *Creighton*, 483 U.S. at 640.

When a defendant asserts qualified immunity at the summary judgment stage, "the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right,

and (2) the constitutional right was clearly established." *Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020) (quoting *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011)). The court may address these two inquiries in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *McCowan v. Morales*, 945 F.3d 1276, 1282 (10th Cir. 2019). If the plaintiff fails to satisfy either test, the court must grant qualified immunity. *McCowan*, 945 F.3d at 1282 (quoting *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1212–13 (10th Cir. 2019)). If the plaintiff succeeds, then—and only then—does the defendant bear the traditional burden of the movant for summary judgment. *Kapinski*, 964 F.3d at 905.

## DISCUSSION

I.   **Defendant Renteria is not entitled to qualified immunity, and a genuine dispute of material fact exists regarding whether or not he had subjective knowledge of a substantial risk of serious harm.**

### A.  Applicable Law

"Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment, as applied to the states via the Fourteenth Amendment. *See Farmer*, 511 U.S. at 828; *Rhodes v. Chapman*, 452 U.S. 337, 344–45 (1981).

A cognizable Eighth Amendment claim contains an objective component (i.e., the inmate is incarcerated under conditions posing a substantial risk of serious harm)[14] and

---

[14] In his Response, Plaintiff also argued that he suffered sufficiently serious harm (i.e., the objective component of the Eighth Amendment analysis). *See* ECF No.96 at 18–19. Given that Defendant did not assert Plaintiff's failure to meet the objective component in his Motion, ECF No. 86, and in light of Defendant's omission of this argument, the Court will not address the objective component. The Court finds

a subjective component (i.e., the prison official was deliberately indifferent to the inmate's safety). *Verdecia*, 327 F.3d at 1175. In order to meet the subjective component, the prison official must know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. Further, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official must also draw the inference. *Id.* Applying *Farmer*, the Tenth Circuit has created a three-part framework for the deliberate indifference standard: (1) The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) the official must actually draw that inference, and (3) the official must be aware of and fail to take reasonable steps to alleviate that risk. *See Perry v. Durborow*, 892 F.3d 1116, 1122 (10th Cir. 2018).

Under 42 U.S.C. § 1983, a plaintiff may seek money damages from government officials who have violated his or her constitutional or statutory rights. In order to successfully assert a § 1983 claim under the Eighth Amendment for failure to protect an inmate from serious harm, a plaintiff must show a specific defendant's personal involvement or participation in the incident. *See Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996) (supervisory status alone is insufficient to assert a § 1983 claim; personal involvement is required) (citing *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996); *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim.").

---

that, for purposes of the present Motion, the parties agree that Plaintiff's alleged injury was sufficiently serious.

**B. Analysis**

 **i. Plaintiff has made a sufficient showing that Defendant Renteria committed a constitutional violation.[15]**

 Plaintiff argues that Defendant Renteria had subjective knowledge of a substantial risk of harm to his safety but failed to take reasonable steps to protect him. Defendant Renteria argues that he had no knowledge of any facts showing that Plaintiff faced a substantial risk of serious harm, and thus he could not have taken reasonable steps to protect Plaintiff from an unknown risk of harm. For summary judgment purposes, because this dispute revolves around a question of fact, the Court must resolve this dispute in Plaintiff's favor.

 Plaintiff has set forth sufficient facts showing that a reasonable jury could find that Defendant Renteria "actually knew about a substantial risk of serious harm to his safety" but nevertheless acted with deliberate indifference by allowing him to remain in Pod 4B and failing to take reasonable steps to protect him from harm at the hands of fellow inmates. *See Verdecia*, 327 F.3d at 1175. The evidence submitted, including Plaintiff's statements and Defendant Renteria's own admissions, shows multiple ways that a reasonable jury could find that Defendant Renteria was personally aware of information that warranted potential reassignment or additional protection. First, during the TAP Committee meeting that Defendant Renteria chaired on July 31, 2019, Plaintiff expressed concern that Padilla was "going to get" him and that Padilla would use other inmates to do so. ECF No. 82, UMF 13; ECF No. 96-2 at 6.  Second, during the same meeting,

---

[15] Defendant Renteria has not argued that Plaintiff's alleged injuries failed to satisfy the objective component of the Eighth Amendment analysis, and the Court generally agrees that violence at the hands of other prisoners is sufficiently serious to establish the objective component. *See Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003).

Defendant Renteria reviewed Plaintiff's disciplinary history, charges, gang affiliation, enemies, and behavioral concerns; this information showed an obvious risk of harm, given Plaintiff's extensive history violence and disciplinary issues, as well as specific safety concerns naming all Los Padillas and Burqueños gang members as enemies.[16] There is no evidence that Defendant Renteria took action in response to any of these threats to Plaintiff's safety, much less reasonable steps to mitigate a known risk of harm. Based on these theories, a reasonable jury could conclude that Defendant Renteria was aware of a specific risk of harm to Plaintiff, and that Defendant Renteria deliberately disregarded this risk, despite the fact that was aware of and had the ability to take reasonable steps to protect Plaintiff from Padilla and other members of the Burqueños gang.

Taking Plaintiff's facts as true for purposes of summary judgment, a reasonable jury could conclude that he was deliberately indifferent to Plaintiff's safety, in violation of the Eighth Amendment.

In light of the above, Plaintiff has met his burden for defeating the first prong of the qualified immunity analysis.

### ii. The law was clearly established at the time of the alleged constitutional violation.

The Court finds that the law was clearly established with regard to deliberate indifference to an inmate's safety from violence at the hands of other prisoners, such that

---

[16] *See* ECF No. 125-6 at 1 (listing eight incidents of fighting, verbal abuse, or threats; one known enemy at Southern; suspected affiliation with two gangs; and administrative segregation for being "identified as leader of street gang [B]urque [B]oys" and "inmate protection); *see also* n.8 *supra* (Defendant Renteria reviewed Plaintiff's specific safety concerns, including one listing "all Los Padillas and Burqueno gang members as enemies").

every reasonable official would have understood that keeping an inmate in an unsafe housing assignment, in this specific context, violates that right. Although Defendant Renteria argues that "[t]here are no cases in the Tenth Circuit or elsewhere with analogous fact patterns to place Defendant Renteria on notice that his actions violated Plaintiff's constitutional rights," ECF No. 82 at 11, the Court disagrees.

A "prison official may be held liable . . . if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 833. In addition to the United States Supreme Court's decision in *Farmer*, which recognized that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners," *id.*, the Tenth Circuit has clearly recognized this right in other contexts. As shown below, Plaintiff has cited at least two Tenth Circuit cases that are sufficiently similar to put a reasonable prison official in Defendant Renteria's position on notice of a potential constitutional violation.

First, in *Howard v. Waide*, the Tenth Circuit held that where prison officials were aware of facts showing that the plaintiff had faced past violence and was at risk of future violence and sexual assault at the hands of a prison gang, those prison officials had a duty to take reasonable steps to protect the plaintiff from members of the prison gang, even if the plaintiff did not name specific gang members. 534 F.3d 1227, 1240–42 (10th Cir. 2008).[18] Second, in *Wilson v. Falk*, the Tenth Circuit held that because certain prison

---

[18] Although the Tenth Circuit noted the "narrowness" of its holding in *Howard*, 534 F.3d at 1242, the facts of *Howard* are sufficiently similar to the present case. In the present case, Plaintiff has shown that Defendant Renteria knew that Plaintiff expressed a credible threat to his safety from Padilla as early as July 31, 2019, and that Padilla was able to inflict harm on Plaintiff through the use of other gang members as his soldiers. ECF No. 82, UMF 13; ECF No. 96-2 at 6. Based on *Howard*, for purposes of summary judgment, a reasonable official in Defendant Renteria's shoes as unit manager and TAP Committee chair would have recognized that members of a specific gang (i.e., the Burqueños) were likely to harm Plaintiff,

officials were subjectively aware of a substantial risk of harm to the plaintiff from members of a rival prison gang, those prison officials were not entitled to qualified immunity unless they took reasonable steps to separate the plaintiff and rival prison gang members. 877 F.3d 1204, 1211 (10th Cir. 2017). In both cases, the Tenth Circuit recognized (as did the Supreme Court in *Farmer*) that prison officials have a duty to ensure that inmates are reasonably protected from excessive risks to their safety. A prison official's knowledge of facts permitting an inference that a prisoner faced a substantial risk of serious harm, combined with evidence that the official actually drew that inference, are sufficient to defeat qualified immunity in certain circumstances. *See Howard*, 534 F.3d at 1239; *Wilson*, 877 F.3d at 1211.

The Court finds that although the facts of every case are necessarily different, the fact patterns of the above cases, at a minimum, were sufficient to put a reasonable official in Defendant Renteria's position on notice that a failure to take reasonable steps to separate under these circumstances would be a violation of Plaintiff's constitutional rights, if the official was aware of facts that led him to believe that Plaintiff faced a substantial risk of serious harm but did not take reasonable steps to mitigate the harm. As long as the unlawfulness of Defendant's actions was apparent in light of pre-existing law, then qualified immunity is inappropriate. *Estate of Booker v. Gomez*, 745 F.3d 405, 433–34 (10th Cir. 2014) (citing *Creighton*, 483 U.S. at 640 (1987)).

---

even if Plaintiff was technically housed in a different housing pod than Padilla. Defendant Renteria was aware that Padilla could communicate with other gang members in other units through the use of kites. ECF No. 96-7 at 10, 14, The facts, when viewed in the light most favorable to Plaintiff, show that this is what ultimately happened in Plaintiff's case, and that Plaintiff was injured as a result.

In light of the above, Plaintiff has met his burden for defeating the second prong of the qualified immunity analysis.

> **iii.  Under the traditional summary judgment analysis, because there is a genuine dispute of material fact regarding whether Defendant Renteria was deliberately indifferent to a substantial risk of serious harm to Plaintiff prior to Plaintiff's injury, the Court cannot grant Defendant Renteria's Motion.**

As already stated, if the plaintiff meets his burden under the qualified immunity analysis, then the defendant bears the traditional burden of the movant for summary judgment. *Kapinski*, 964 F.3d at 905. Based on the same facts analyzed in Section B(i) above, when viewing these facts in the light most favorable to the nonmovant (i.e., Plaintiff), Defendant Renteria has not shown the absence of a genuine dispute of material fact regarding Plaintiff's claims of deliberate indifference under the Eighth Amendment. Instead, the evidence shows that by failing to take reasonable steps in response to specific threats of which Plaintiff told him, both orally and in writing, Defendant Renteria was deliberately indifferent to a substantial risk of harm to Plaintiff, including (but not limited to) harm at the hands of Padilla and those Burqueños gang members who carried out his orders, including Garcia, who was housed in the same pod as Plaintiff. Therefore, summary judgment would not be appropriate on any of Plaintiff's § 1983 claims.

**II.  Defendant Renteria's immunity as a state governmental employee has not been waived under § 41-4-6 of the NMTCA; therefore, the Court must grant summary judgment in his favor on Count III.**

### A.  Applicable Law

Under the NMTCA, a New Mexico "governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort," subject to certain specifically enumerated exceptions, or waivers of immunity. *See* N.M.

Stat. Ann. § 41-4-4(A) (1978). One waiver of immunity exists for negligence claims against "public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." *See id.*, § 41-4-6. While it may be appropriately termed a "premises liability" statute, the waiver of immunity under § 41-4-6 applies to more than the operation or maintenance of the physical aspects of the building. It also includes safety policies necessary to protect people who use the building, as well as operation and maintenance of machinery, equipment, or furnishings. *See id.*; *Upton v. Clovis Mun. Sch. Dist.*, 141 P.3d 1259, 1261 (N.M. 2006) (citing *Castillo v. Santa Fe Cnty.*, 755 P.2d 48, 50 (N.M. 1988); *Leithead v. City of Santa Fe*, 940 P.2d 459, 462–463 (N.M. 1997)); *Bober v. N.M. State Fair*, 808 P.2d 614, 623 (N.M. 1991).

The New Mexico Supreme Court and Court of Appeals have explained some of the limits of the waiver of immunity contained in § 41-4-6. For instance, these courts have held that the waiver does not apply to mere negligent supervision, but the waiver can apply to negligent acts of employee supervision that endanger the general public. *Compare Espinoza v. Town of Taos*, 905 P.2d 718, 722 (N.M. 1995) (waiver did not exist where failure to supervise children in a playground did not render the premises unsafe) *with Leithead*, 940 P.2d at 462–463 (waiver existed for injury resulting from creation of dangerous condition to the general public in the operation of a swimming pool without an adequate number of trained lifeguards).

Pertinent to the present case, New Mexico courts have also opined on tort claims involving the operation of New Mexico prisons. For instance, in *Archibeque v. Moya*, a prison administrator negligently failed to check a list of names before placing an inmate

into an area of the prison with his known enemies. 866 P.2d 344, 347 (N.M. 1993). In that case, the New Mexico Supreme Court held that immunity was not waived when a governmental employee was "performing an administrative function associated with the operation of the corrections system." *Id.* In addition to finding that the express language of § 41-4-6 did not cover administrative functions "affect[ing] a single inmate," the court also noted that the purpose of the NMTCA would be undermined if the state were to be found subject to liability "for virtually any mistake made during the administration of corrections facilities that results in injury to an inmate." *See id.* at 349.

In *Calloway v. New Mexico Department of Corrections*, the New Mexico Court of Appeals distinguished *Archibeque* by recognizing that the waiver of immunity applies to a state prison facility if defendants "knew or should have known that roaming gang members with a known propensity for violence had access to potential weapons in the recreation area, that such gang members created a dangerous condition on the premises of the penitentiary, and that the danger to other inmates was foreseeable." 875 P.2d 393, 398–399 (N.M. Ct. App. 1994). The distinction drawn between *Archibeque* and *Calloway* was that in *Calloway*, the defendants' actions resulted in a risk of harm to the general prison population, thus creating an unsafe condition on the prison premises. *See id.* at 399. The court in *Calloway* noted that *Archibeque*, on the other hand, did not involve a risk of harm to the general prison population, but rather an administrative decision affecting one inmate. *See id.*

Ultimately, New Mexico courts have recognized that, with respect to whether immunity is waived under § 41-4-6, "the critical question is whether the condition creates a potential risk to the general public." *See Espinoza*, 905 P.2d at 721. "[T]he reference to

the 'general public' in *Espinoza* does not mean a condition that must be dangerous to the entire public, but rather, at least potentially, to the particular class of people that use the building or facility in question." *Upton*, 141 P.3d at 1264. "The key point in *Espinoza* is that the negligence must be of a kind which makes the premises dangerous, or potentially so, to the affected public, the consumers of the service or the users of the building, including the plaintiff." *Id.* at 1265.

### B.  Analysis[19]

As stated above, in order for Defendant Renteria to be subject to a waiver of immunity as a state governmental employee under § 41-4-6, Plaintiff would need to show that Defendant Renteria's failure to segregate him from members of the Burqueños gang resulted in creation of a danger to all inmates or a general class of inmates, rather than a danger to Plaintiff only. *See, e.g., Archibeque*, 866 P.2d at 347 ("operation" and "maintenance" of penitentiary premises under § 41-4-6 "does not include the security, custody, and classification of inmates"); *see also Kreutzer v. Aldo Leopold High Sch.*, 409 P.3d 930, 943 (N.M. Ct. App. 2017) (absent additional facts such as a pattern of violence in a specific area of the premises, § 41-4-6 does not apply to a single student-on-student altercation occurring on school property); *Lessen v. City of Albuquerque*, 187 P.3d 179, 180–185 (N.M. Ct. App. 2008) (§ 41-4-6 did not apply to city's release of a pretrial

---

[19] Although Plaintiff did not assert a waiver of immunity against Renteria under § 41-4-6 in the First Amended Complaint, ECF No. 30, he now claims this waiver of immunity in his Response to Defendant Renteria's Motion for Summary Judgment. *See* ECF No. 98 at 28–31. In his Reply, Defendant Renteria argues that Plaintiff "cannot, for the first time in opposition to a motion for summary judgment, raise a new or materially different theory of recovery against a party from those pleaded in the complaint and bill of particulars." *See* ECF No. 125 at 24. For reasons contained in the Analysis section, given that Plaintiff's claims would be futile under any § 41-4-6 theory, the Court need not (and therefore will not) address this argument.

detainee "inmate" with heroin withdrawal, given that the alleged risk was "specific to the City's treatment of decedent," rather than the general "population of released inmates").

In the present case, however, Plaintiff has not shown that the harm he suffered was due to Defendant Renteria's creation of a risk to a general class of inmates. To the contrary, the facts presented by Plaintiff show that even though Defendant Renteria was unit manager and presided over the TAP Committee process, which could have reassigned Plaintiff to different housing accommodations or other protective measures, this would have been a decision related to the "security, custody, and classification" of an inmate (i.e., Plaintiff individually), rather than a decision creating a general risk of harm to the prison population or segment thereof. *See Archibeque*, 866 P.2d at 347. Therefore, the waiver of immunity under § 41-4-6 does not apply to Defendant Renteria, even when the Court views the facts in the light most favorable to Plaintiff.[20]

In light of the facts and the law stated above, the Court finds that Plaintiff has not asserted an applicable waiver of governmental immunity for tort claims under the NMTCA, and therefore summary judgment in favor of Defendant Renteria is appropriate as to all claims brought against him under the NMTCA (Count III of the First Amended Complaint).[21]

---

[20] Plaintiff has presented facts alleging that Defendant Renteria had a policy, practice, or custom of relying on inmates to raise safety concerns "rather than acting on documented safety concerns in their CMIS file." *See* ECF No. 96 at 12. To the extent that Plaintiff has made an argument regarding NMCD's policies, practices, or customs, this will be addressed in the Court's order on Defendant NMCD's Motion for Summary Judgment, ECF No. 81, if necessary.

[21] As already noted, Plaintiff has abandoned his argument that the NMTCA waiver of immunity for "law enforcement officers," N.M. Stat Ann. § 41-4-12 (1978), applies to this case. ECF No. 96 at 28. Therefore, the Court will not address it.

## CONCLUSION

For the foregoing reasons, Defendant Abel Renteria's Motion for Summary Judgment, filed on August 2, 2021, ECF No. 82, is hereby **GRANTED IN PART** and **DENIED IN PART**.

Summary judgment is granted in favor of Defendant Abel Renteria for all claims brought against him in Count III of the First Amended Complaint, ECF No. 30. In all other respects, including Defendant Renteria's assertion of qualified immunity, the Motion is denied.

**IT IS SO ORDERED.**

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

24