## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

CHRISTOPHER CHAVEZ,

     Plaintiff,

v.                                                    Civ. No. 1:20-cv-00812 MIS/LF

ABEL RENTERIA; JOHN DOE 1;
CHRISTOPHER TURNBOW;[1] CARLOS SAENZ;
DANIEL BLANCO, in his individual capacity;
ESTEVAN FLORES, in his official capacity; and
NEW MEXICO CORRECTIONS DEPARTMENT,

     Defendants.

### MEMORANDUM OPINION AND ORDER
### ON DEFENDANT CHRISTOPHER TURNBOW'S
### MOTION FOR SUMMARY JUDGMENT (ECF NO. 84)

THIS MATTER is before the Court on Defendant Christopher Turnbow's Motion for Summary Judgment. ECF No. 84. Plaintiff filed his Response, and Defendant Turnbow filed his Reply. ECF Nos. 98, 126. Having considered the parties' submissions, the record, and the relevant law, the Court will grant the Motion in part and deny it in part.

### PROCEDURAL BACKGROUND

This is a case brought by Plaintiff, Christopher Chavez ("Plaintiff"), a former inmate housed at the Southern New Mexico Correctional Facility ("Southern"), against housing captain Defendant Christopher Turnbow ("Defendant Turnbow") and other employees of the New Mexico Corrections Department ("NMCD"). Plaintiff has also sued NMCD itself.

---

[1] Defendant is listed as "Christopher Turbow" in the First Amended Complaint. ECF No. 30. The person that filed a waiver of the service of summons is "Christopher Turnbow," however. ECF No. 40. The Court will refer to this Defendant as "Christopher Turnbow." The parties are advised to file the appropriate documents to address this discrepancy, if necessary.

Pertinent to the present Motion, Plaintiff alleges that Defendant Turnbow committed violations of the Eighth and Fourteenth Amendments to the United States Constitution compensable under 42 U.S.C. § 1983 (Count I), as well as torts within the New Mexico Tort Claims Act's waiver of immunity for law enforcement officers, N.M. Stat. Ann. § 41-4-12 (1978) (Count III).[2] *See* ECF No. 30, ¶¶ 78–92, 101–107. Specifically, Plaintiff alleges that Defendant Turnbow was deliberately indifferent to a substantial risk of Plaintiff being harmed by being housed with members of a dangerous prison gang known as the "Burqueños," and that, due to Defendant Turnbow's indifference, a member of the Burqueños gang threw a cup of boiling water in Plaintiff's face, resulting in severe injury to Plaintiff. Plaintiff also alleges that as a "law enforcement officer" under the New Mexico Tort Claims Act ("NMTCA") (N.M. Stat. Ann. § 41-4-12 (1978)), Defendant Turnbow negligently allowed Plaintiff to be housed with members of the Burqueños gang, resulting in the injury he sustained.

The present Motion, ECF No. 84, seeks summary judgment on all claims brought by Plaintiff against Defendant Turnbow. Specifically, Defendant Turnbow asserts qualified immunity, arguing that he did not violate Plaintiff's Eighth Amendment rights because he was not aware of facts from which the inference could be drawn that Plaintiff faced a substantial risk of serious harm.[3] He also argues that he is entitled to qualified immunity because, even assuming a constitutional violation occurred, the relevant law was not clearly established at the time of the alleged violation. Defendant Turnbow also argues

---

[2] The remaining claims, which are listed under Count II and Count IV of the First Amended Complaint, do not apply to Defendant Turnbow. *See* ECF No. 30 at 17, 19.

[3] *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

that he is not a "law enforcement officer" under the NMTCA, and that therefore governmental immunity has not been waived for tort claims brought against him as an employee of the State of New Mexico acting within the scope of his duties.

In response to the Motion, Plaintiff argues there is sufficient evidence showing that Defendant Turnbow was aware of, and deliberately indifferent to, a substantial risk of serious harm to Plaintiff from the Burqueños gang. Plaintiff also argues that his Eighth Amendment right to inmate safety was clearly established, as applied to Defendant Turnbow and the facts of this case. Further, Plaintiff argues that New Mexico's governmental immunity from tort claims has been waived under N.M. Stat. Ann. § 41-4-6 (1978) (waiver of immunity for negligent operation of any "building, public park, machinery, equipment or furnishings").[4] The Court will address each of Defendant Turnbow's relevant arguments, and Plaintiffs' relevant responses thereto, in turn.

## FACTUAL BACKGROUND

The facts stated below are either undisputed or stated in the light most favorable to the nonmovant for purposes of the present Motion:[5]

During the time period relevant to this lawsuit, Plaintiff was an inmate in the custody of NMCD. *See* ECF No. 84, UMF 1. While incarcerated, Plaintiff claimed on multiple

---

[4] In the First Amended Complaint, Plaintiff pleaded that N.M. Stat. Ann. § 41-4-12 (1978) (law enforcement exception to the NMTCA) applies to his claims against Defendant Turnbow. *See* ECF No. 30 at 18–19. In his Response to the present Motion, Plaintiff now states that he "agrees that, at the time of the incident, § 41-4-12 did not apply to corrections officers responsible for inmates post-conviction." ECF No. 98 at 27. Therefore, Plaintiff has abandoned his argument (if any) that § 41-4-12 applies to Defendant Turnbow.

[5] For purposes of the Motion for Summary Judgment, the Court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. *See* Standard for Summary Judgment section.

occasions that he was at risk of violence from members of the Los Padillas and Burqueños gangs, due to past physical altercations with, and threats from, members of these gangs. *See* ECF No. 98, UMFs dd, ee, kk.[6] Since at least 2011,[7] Plaintiff has experienced gang-related violence from, or physical altercations with, members of these gangs, including violent assaults on Plaintiff in 2011 and 2017. *Id.* Also, in 2013, Plaintiff was placed in involuntary inmate protection due to information from confidential informants that younger members of the Burqueños gang had placed a "hit" on him, thus making him a target for future violence. *See id.* The above-mentioned safety concerns were clearly noted in Plaintiff's inmate file and were known to various officials within NMCD. *See id.* As of 2019 (the year of the injury claimed in this lawsuit), at least one notation in Plaintiff's inmate file reflected that this safety concern (i.e., the risk of violence from Los Padillas and Burqueños gang members) was unresolved. *See id.*, UMF ff.

Within the NMCD system (including Southern), prison gangs pose a significant threat to inmate health and safety, due to their illicit activities such as drug trafficking, extortion, and violence. *See* ECF No. 98, UMFs a–h. Prison gangs, including the Los Padillas and Burqueños gangs, exert power and control over the prison population through the use of intimidatory tactics and violence. *Id.* NMCD knows that these two specific gangs pose a threat to inmate health and safety, and NMCD has classified these

---

[6] All of the lettered facts presented by Plaintiff are part of Plaintiff's UMF 18. *See* ECF No. 98 at 6. The Court will refer to these facts by letter only.

[7] Plaintiff's "safety concerns" file reflects that in the years prior to his injury, Plaintiff claimed "all Los Padillas & Burqueno gang members as enemies" due to problems with Los Padillas gang members at several other NMCD facilities, and that he "had to fight or has been assaulted by members of both gangs at those facilities due to problem[s]." *See* ECF No. 98-3 at 2. Defendant Turnbow has admitted that this indicates that it was a safety risk for Plaintiff to be placed with members of the Burqueños gang. ECF No. 98-1 at 11.

gangs as "disruptive threat groups" ("DTGs"), which are groups involved in criminal activities within the prison facility. *See id.* The Burqueños are the largest DTG within the NMCD system. *Id.* NMCD has a policy encouraging inmates affiliated with DTGs to "dissociate" from, or renounce their affiliation with, these groups. *Id.*, UMFs i, j; ECF No. 98-9 at 6. Dissociation from a DTG endangers the safety of an inmate, putting the inmate at risk of violent attacks by members of DTGs. ECF No. 98, UMF k; ECF No. 98-8 at 3; ECF No. 98-9 at 7–8. Plaintiff had sought to dissociate from the Burqueños gang "many times" in the years preceding his injury. *See* ECF No. 126-6 at 2.

Prior to being transferred to Southern, where Plaintiff's injury occurred, Plaintiff was in the custody of NMCD at the Regional Diagnostic Facility, which is part of the Central New Mexico Correctional Facility. ECF No. 84, UMF 7. On July 23, 2019, he was transferred to Southern. *Id.* After his transfer to Southern, he was placed into housing Pod 4B, which was part of a "Level IV" housing unit consisting of inmates who are monitored more closely and are considered a higher threat level than other inmates. ECF No. 98, UMFs o–q.

Defendant Turnbow was the housing captain who reviewed Plaintiff's inmate file and placed him into Pod 4B. *Id.*, UMFs m–o. In this role, Defendant Turnbow had decision-making authority over housing assignments of incoming inmates including Plaintiff. *Id.* One of Defendant Turnbow's responsibilities was to ensure that housing assignments did not endanger inmates from potential physical assaults or other disturbances between inmates. *See id.*, UMF s. Defendant Turnbow is aware that an assault may result from housing an inmate with enemies. *Id.*, UMF jj. Although other prison administrators had the power to review inmate housing assignments and make

5

adjustments as necessary, in general, Defendant Turnbow had the final say in making housing assignments for inmates within his control.[8] ECF No. 98-1 at 6.

As part of his practice for each incoming inmate under his control, Defendant Turnbow would pull up the inmate's file in the Corrections Management Information System ("CMIS"), verify the inmate's custody level, and look at the inmate's CBC Summary Review Report,[9] which contains an inmate's conviction history, misconduct reports, known enemies, gang affiliations, administrative segregation history, and medical/mental health summary, among other information. *See* ECF No. 84-6 at 1–2; ECF No. 91-1 at 4. Notably, the CBC Summary Review Report does not contain an inmate's detailed safety concerns, which must be viewed on a separate screen. *See* ECF No. 98-1 at 4. Although Defendant Turnbow would look at the CBC Summary Review Report as a matter of course prior to making an inmate housing assignment, he would not necessarily look at other CMIS screens, such as an inmate's detailed safety concerns, unless "something prompted" him to do so. *See* ECF No. 98, UMF ii; *see also* ECF No. 98-1 at 4. According to Defendant Turnbow, some things that would prompt him to look at an inmate's detailed safety concerns would be if the inmate had "a lot of fights" or "something . . . on their history" that warranted further review. *See* ECF no. 98-1 at 4–5. After reviewing the inmate's file, Defendant Turnbow would then assign the inmate to a cell based on custody level, known enemies, and number of beds. ECF No. 98, UMF ii.

---

[8] The Court notes that it has found nothing in the record to suggest that a higher-level prison administrator made adjustments to Plaintiff's housing assignment after Defendant Turnbow assigned Plaintiff to Pod 4B.

[9] The parties have not defined "CBC Summary Review Report," but it appears to be a computer printout taken from the CMIS database.

Defendant Turnbow admits that he reviewed Plaintiff's CBC Summary Review Report dated March 12, 2019; however, he does not recall reviewing Plaintiff's detailed safety concerns, which were listed on a separate screen. *See* ECF No. 84, UMFs 8–9. 12; ECF No. 98, UMFs m–o. Plaintiff's CBC Summary Review Report listed (in relevant part) the following:

New Mexico
Corrections Department
CBC Summary Review Report

.    .    .

Name: CHAVEZ, CHRISTOPHER CANDEL

.    .    .

Misconduct Reports

.    .    .

09/09/2017-FIGHTING(MAJOR);  .  .  .  08/01/2016-STRIKES OR THREATENS TO STRIKE A STAFF M(MAJOR);  .  .  . 08/08/2016-THREATENING ANOTHER PERSON OR COMMUNICAT(MAJOR);  .  .  .  12/27/2012-FIGHTING OR HORSEPLAY(MAJOR);  .  .  .  12/16/2008-THREATENING ANOTHER PERSON OR COMMUNICAT(MAJOR); 09/12/2008-VERBAL ABUSE OR GESTURES(MINOR);  .  .  . 11/08/2004-FIGHTING OR HORSEPLAY(MINOR);  .  .  . 03/09/2000 USE ABUSIVE WORDS/GESTURES TO PROVOKE FI(MAJOR)

.    .    .

Enemies

.    .    .

MICHAEL PADILLA-56545 SNMCF MAIN;

.    .    .

STG[10]
OLD TOWN - ABQ-SUSPECTED; BURQUENOS-SUSPECTED
Administrative Segregation Time

.    .    .

Start 05/22/2009 i/m identified as leader of street gang burque boys; Start 05/15/2013 INMATE PROTECTION

.    .    .

---

[10] In the context of the CBC Summary Review Report, "STG" stands for the "Security Threat Group" section and includes suspected gang affiliations. *See, e.g.*, ECF No. 98, UMF b; ECF No. 98-6 at 1.

ECF No. 84-6 at 1. As shown above, the report reviewed by Defendant Turnbow listed eight incidents of fighting, verbal abuse, or threats; one known enemy at Southern; suspected affiliation with two gangs; and administrative segregation for being "identified as leader of street gang [B]urque [B]oys" and "inmate protection." *Id.*[11]

Ultimately, Defendant Turnbow's assignment of Plaintiff to Pod 4B resulted in Plaintiff being housed with inmate Joshua Garcia, a suspected member of the Burqueños gang. ECF No. 98-1 at 9; ECF No. 98-5 at 1. On August 5, 2019, Plaintiff was on the phone in his pod when he was approached by Garcia. ECF No. 98, UMF uu.[12] Garcia was carrying a cup filled with scalding hot water, which he had retrieved from the microwave, and he threw the substance onto Plaintiff, injuring him. *See* ECF No. 98-5 at 1–4. As a result of being doused with the hot water, Plaintiff suffered first- and second-degree burns to his face, neck, chest, and shoulders. *See* ECF No. 98, UMF bbb; ECF No. 98-17 at 1.[13] He also suffered internal injury to his esophagus. ECF No. 98-11 at 7.

---

[11] In his Motion for Summary Judgment, Defendant Turnbow stated that when he "viewed the CBC Summary Review Report from March 12, 2019, there were no safety concerns listed." ECF No. 84, UMF 9. Defendant Turnbow must have known that the CBC Summary Review Report did not contain inmate safety concerns, which he would have had to view on a separate screen, given that during his deposition, he described in detail the process for viewing inmate safety concerns. *See* ECF No. 98-1 at 4–5. When viewed in the light most favorable to Plaintiff, his statement that "there were no safety concerns listed" is disingenuous, given that Defendant Turnbow stated during his deposition that he would be prompted to look at an inmate's detailed safety concerns if "the inmate had "a lot of fights" or there was "something on their history" that warranted further review. *Id.* In other words, Defendant Turnbow knew what inmate "safety concerns" were, and he knew that these concerns were only visible on a separate screen. Nevertheless, the Court finds that a reasonable juror could conclude that a history of at least six to eight incidents of fighting, verbal abuse, or threats as listed in the CBC Summary Review Report (which Defendant Turnbow admits reviewing) is "a lot of fights" and that by Defendant Turnbow's own admission, there was sufficient information in Plaintiff's file to warrant further review of his safety concerns prior to making a housing assignment.

[12] Defendant Turnbow disputes only the portion of Plaintiff's UMF uu regarding whether Garcia is a "known member" of the Burqueños. *See* ECF No. 126 at 13. This dispute is immaterial, given that the parties do not dispute that Garcia was a "suspected" member. *Id.*

[13] Defendant Turnbow disputes only the portion of Plaintiff's UMF bbb that indicates Plaintiff suffered "serious" or "severe" injuries. *See* ECF No. 126 at 14. The record reflects that Plaintiff suffered

Plaintiff was burned so severely that he was unable to eat solid foods, and his weight dropped 40 pounds in about a month. ECF No. 98, UMF ggg; ECF No. 98-11 at 7.[14] Plaintiff also experienced long-lasting changes to his skin, including increased sensitivity, changes in skin color, pain in the injured areas, and psychological harm. ECF No. 98, UMFs iii, jjj, kkk; ECF No. 98-11 at 6. He also suffered bruising to his legs from bean bag rounds that were deployed against him by prison guards as a result of the encounter with Garcia. ECF No. 98-5 at 1–2. After the injury, Plaintiff was transported to MountainView Regional Medical Center in Las Cruces, then airlifted to the University of New Mexico Hospital's burn unit in Albuquerque. ECF No. 98, UMFs ddd, eee; ECF No. 98-11 at 6.

Prior to Plaintiff's injury, Garcia's inmate file reflected a history of at least one other gang-related assault on a fellow inmate, as well as a history of violence. *See* ECF No. 98-4 at 3–8. Garcia had also warned Plaintiff before the assault, "Mike [Padilla] don't want you in this unit." *Id.*, UMF tt.[15] During an interview after the assault, Garcia would not say anything other than, "It had to be done, it was a long time coming." *Id.*, UMF aaa.

---

"first degree" and "second degree burns" (*see, e.g.,* ECF No. 98-17), so the Court will use this terminology instead. Regardless, the parties do not dispute whether Plaintiff's injuries were sufficiently serious under the objective component of the Eighth Amendment analysis, so this dispute is immaterial. *See also* n.17 *infra*.

[14] Defendant Turnbow disputes Plaintiff's UMF ggg, stating that although "Plaintiff may have experienced throat pain from the incident," the problem was not "on-going" and that Plaintiff lost 15 pounds, not 40 pounds. *See* ECF No. 126 at 14–15. This dispute regarding the severity of Plaintiff's injury is immaterial.

[15] Defendant Turnbow disputes Plaintiff's UMF tt, stating that he "disputes that Garcia and Plaintiff were in medical together prior to the attack or that Garcia [issued a warning to Plaintiff]." ECF No. 126 at 12–13. In support of this dispute of fact, Defendant Turnbow states that Plaintiff could have shared this information with a corrections officer but "made no mention of this during his interview after the assault" or "in his Complaint," thus suggesting that Plaintiff's statement is not credible. *Id.* at 13. Viewing the evidence in the light most favorable to the nonmovant, the Court assumes that Plaintiff's statement, made under oath during his deposition, is true for summary judgment purposes.

**LEGAL STANDARDS**

I.      **Standard for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure allows summary judgment when the evidence submitted by the parties establishes that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the nonmovant is required to put in the record facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52 (1986). A fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id.* at 248.[16]

The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988). Rather, the nonmovant has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [their] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (quoting *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998)) (internal quotation marks omitted).

---

[16] Several of the facts presented by the parties are immaterial. The Court acknowledges that some of the facts, although immaterial, are helpful for the purpose of providing background and context of the case. If material, the Court will apply these facts, as necessary, in the Analysis section of this Memorandum Opinion and Order.

It is not the Court's role to weigh the evidence or assess the credibility of witnesses in ruling on a motion for summary judgment. *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012). Rather, the Court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. *See Hunt v. Cromartie*, 526 U.S. 541, 551–52 (1999); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). However, summary judgment may nevertheless be granted where "the evidence is merely colorable, or is not significantly probative." *Liberty Lobby, Inc.*, 477 U.S. at 249–50.

## II.      Qualified Immunity Standard

The doctrine of qualified immunity protects government officials from suit unless their actions violate a "clearly established" statutory or constitutional right. *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)). A right is clearly established only when, at the time of the challenged conduct, "the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014).

"A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quoting *Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006) (internal quotation marks omitted)); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 289–90 (2018) ("The rule must be settled law, which means it is dictated by controlling authority or a robust consensus

of cases of persuasive authority." (internal citations and quotation marks omitted)). Although the plaintiff is not required to identify a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela*, 138 S. Ct. at 1152 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). Clearly established law cannot be defined "at a high level of generality"; rather, it must be particularized to the facts of the case. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011); *see Anderson v. Creighton*, 483 U.S. 635, 640 (1987). But "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007)). The dispositive question is whether the unlawfulness of the official's actions was apparent in light of pre-existing law. *Creighton*, 483 U.S. at 640.

When a defendant asserts qualified immunity at the summary judgment stage, "the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established." *Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020) (quoting *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011)). The court may address these two inquiries in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *McCowan v. Morales*, 945 F.3d 1276, 1282 (10th Cir. 2019). If the plaintiff fails to satisfy either test, the court must grant qualified immunity. *McCowan*, 945 F.3d at 1282 (quoting *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1212–13 (10th Cir. 2019)). If the plaintiff succeeds, then—and only then—does the defendant bear the traditional burden of the movant for summary judgment. *Kapinski*, 964 F.3d at 905.

**DISCUSSION**

I.    **Defendant Turnbow is not entitled to qualified immunity, and a genuine dispute of material fact exists regarding his whether or not he had subjective knowledge of a substantial risk of serious harm, which must be determined by a jury.**

   **A.  Applicable Law**

"Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment, as applied to the states via the Fourteenth Amendment. *See Farmer*, 511 U.S. at 828; *Rhodes v. Chapman*, 452 U.S. 337, 344–45 (1981).

A cognizable Eighth Amendment claim contains an objective component (i.e., the inmate is incarcerated under conditions posing a substantial risk of serious harm)[17] and a subjective component (i.e., the prison official was deliberately indifferent to the inmate's safety). *Verdecia*, 327 F.3d at 1175. In order to meet the subjective component, the prison official must know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. Further, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official must also draw the inference. *Id.* Applying *Farmer*, the Tenth Circuit has created a three-part framework for the deliberate indifference standard: (1) The official must be aware of facts

---

[17] In his Response, Plaintiff also argued that he suffered sufficiently serious harm (i.e., the objective component of the Eighth Amendment analysis). *See* ECF No.98 at 18. Given that Defendant did not assert Plaintiff's failure to meet the objective component in his Motion, ECF No. 84, and in light of Defendant's omission of this argument, the Court will not address the objective component. The Court finds that, for purposes of the present Motion, the parties agree that Plaintiff's alleged injury was sufficiently serious.

from which the inference could be drawn that a substantial risk of serious harm exists, (2) the official must actually draw that inference, and (3) the official must be aware of and fail to take reasonable steps to alleviate that risk. *See Perry v. Durborow*, 892 F.3d 1116, 1122 (10th Cir. 2018).

Under 42 U.S.C. § 1983, a plaintiff may seek money damages from government officials who have violated his or her constitutional or statutory rights. In order to successfully assert a § 1983 claim under the Eighth Amendment for failure to protect an inmate from serious harm, a plaintiff must show a specific defendant's personal involvement or participation in the incident. *See Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996) (supervisory status alone is insufficient to assert a § 1983 claim; personal involvement is required) (citing *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996); *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim.").

### B. Analysis

#### i. Plaintiff has made a sufficient showing that Defendant Turnbow committed a constitutional violation.[18]

Plaintiff argues that Defendant Turnbow had subjective knowledge of a substantial risk of harm to his safety but failed to take reasonable steps to protect him. Defendant Turnbow argues that he had no knowledge of any facts showing that Plaintiff faced a substantial risk of serious harm, and thus he could not have taken reasonable steps to protect Plaintiff from an unknown risk of harm. For summary judgment purposes, because

---

[18] Defendant Turnbow has not argued that Plaintiff's alleged injuries failed to satisfy the objective component of the Eighth Amendment analysis, and the Court generally agrees that violence at the hands of other prisoners is sufficiently serious to establish the objective component. *See Verdecia*, 327 F.3d at 1175.

this dispute revolves around a question of fact, the Court must resolve this dispute in Plaintiff's favor.

Plaintiff has set forth sufficient facts showing that a reasonable jury could find that Defendant Turnbow "actually knew about a substantial risk of serious harm to [Plaintiff's] safety" but nevertheless acted with deliberate indifference by assigning him to Pod 4B and failing to take reasonable steps to protect him from harm. *See Verdecia*, 327 F.3d at 1175. The evidence submitted, including Defendant Turnbow's own admissions, shows that Defendant Turnbow was personally aware of information in Plaintiff's inmate file that warranted potential reassignment to different housing or other safety measures. Specifically, Defendant Turnbow admitted that he reviewed Plaintiff's CBC Summary Review Report from March 12, 2019, which showed that Plaintiff had an extensive history of at least six to eight incidents of fighting, verbal abuse, or threats; at least one enemy (Burqueños gang member Michael Padilla) at Southern; suspected affiliation with two gangs; and administrative segregation time for being "identified as leader of street gang [B]urque [B]oys," and for "inmate protection." ECF No. 126-3 at 1. Defendant Turnbow further stated that his normal course of action was to review an inmate's specific safety concerns if the inmate's CBC Summary Review report contained a history of a lot of fights or other information warranting further review.

Defendant Turnbow has argued that there is no evidence that he actually reviewed Plaintiff's detailed safety concerns, which are listed on a separate screen from the CBC Summary Review Report. However, viewed in the light most favorable to the nonmovant, a reasonable jury could conclude that Defendant Turnbow *did* review Plaintiff's detailed safety concerns, given that he admitted that it was his normal practice to review these

15

types of concerns if an inmate had a "lot of fights." Plaintiff's CBC Summary Review Report reflected a significant history of fights, gang activity, inmate protection, and at least one enemy at Southern. Therefore, Plaintiff has presented evidence sufficient to conclude that Defendant Turnbow was aware of substantial risks to his safety, based on Plaintiff's extensive history listed in the CBC Summary Review Report, as well as the specific information listed in his detailed safety concerns.[19]

Based on the facts presented, a reasonable jury could conclude that Defendant Turnbow was deliberately indifferent to a substantial risk of harm that Plaintiff faced. Taking Plaintiff's facts as true for purposes of summary judgment, the only reasonable conclusion is that Defendant Turnbow *must have* disregarded information contained in Plaintiff's CBC Summary Review Report and safety concerns file, thus putting Plaintiff at an excessive risk of violence. Because the evidence shows that Defendant Turnbow knew of this information but did not take reasonable steps to mitigate the risk, a reasonable jury could conclude that he was deliberately indifferent to Plaintiff's safety, in violation of the Eighth Amendment.

In light of the above, Plaintiff has met his burden for defeating the first prong of the qualified immunity analysis.

### ii.  The law was clearly established at the time of the alleged constitutional violation.

The Court finds that the law was clearly established with regard to deliberate indifference to an inmate's safety from violence at the hands of other prisoners, such that

---

[19] "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . , and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious" *Farmer*, 511 U.S. at 842.

every reasonable official would have understood that placing the inmate into an unsafe housing assignment, in this specific context, violates that right. Although Defendant Turnbow argues that "[t]here are no cases in the Tenth Circuit or elsewhere with analogous fact patterns to place Defendant [Turnbow] on notice that his actions violated Plaintiff's constitutional rights," ECF No. 84 at 9, the Court disagrees.

A "prison official may be held liable . . . if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 833. In addition to the United States Supreme Court's decision in *Farmer*, which recognized that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners," *id.*, the Tenth Circuit has clearly recognized this right in other contexts. As shown below, Plaintiff has cited at least two Tenth Circuit cases that are sufficiently similar to put a reasonable prison official in Defendant Turnbow's position on notice of a potential constitutional violation.

First, in *Howard v. Waide*, the Tenth Circuit held that where prison officials were aware of facts showing that the plaintiff had faced past violence and was at risk of future violence and sexual assault at the hands of a prison gang, those prison officials had a duty to take reasonable steps to protect the plaintiff from members of the prison gang, even if the plaintiff did not name specific gang members. 534 F.3d 1227, 1240–42 (10th Cir. 2008).[20] Second, in *Wilson v. Falk*, the Tenth Circuit held that because certain prison

---

[20] Although the Tenth Circuit noted the "narrowness" of its holding in *Howard*, 534 F.3d at 1242, the facts of *Howard* are sufficiently similar to the present case. In the present case, it is undisputed that Defendant Turnbow knew of Plaintiff's prior gang affiliation and some of Plaintiff's gang history, even though the identity of the specific gang member that ultimately attacked Plaintiff may not have been apparent. Based on *Howard*, for purposes of summary judgment, a reasonable official in Defendant Turnbow's shoes would have recognized that members of a specific gang (i.e., the Burqueños or Los Padillas gang) were

officials were subjectively aware of a substantial risk of harm to the plaintiff from members of a rival prison gang, those prison officials were not entitled to qualified immunity unless they took reasonable steps to separate the plaintiff and rival prison gang members. 877 F.3d 1204, 1211 (10th Cir. 2017). In both cases, the Tenth Circuit recognized (as did the Supreme Court in *Farmer*) that prison officials have a duty to ensure that inmates are reasonably protected from excessive risks to their safety. A prison official's knowledge of facts permitting an inference that a prisoner faced a substantial risk of serious harm, combined with evidence that the official actually drew that inference, are sufficient to defeat qualified immunity in certain circumstances. *See Howard*, 534 F.3d at 1239; *Wilson*, 877 F.3d at 1211.

The Court finds that although the facts of every case are necessarily different, the fact patterns of the above cases, at a minimum, were sufficient to put a reasonable official in Defendant Turnbow's position on notice that failure to take reasonable steps to separate would be a violation of Plaintiff's constitutional rights, if the official was aware of facts that led him to believe that Plaintiff faced a substantial risk of serious harm but did not take reasonable steps to mitigate the harm. As long as the unlawfulness of Defendant's actions was apparent in light of pre-existing law, then qualified immunity is inappropriate. *Estate of Booker v. Gomez*, 745 F.3d 405, 433–34 (10th Cir. 2014) (citing *Creighton*, 483 U.S. at 640).

In light of the above, Plaintiff has met his burden for defeating the second prong of the qualified immunity analysis.

---

likely to harm Plaintiff, even if the official did not know the names of the specific gang members that were likely to harm him.

      **iii.**    **Under the traditional summary judgment analysis, because there is a genuine dispute of material fact regarding whether Defendant Turnbow was deliberately indifferent to a substantial risk of serious harm to Plaintiff prior to Plaintiff's injury, the Court cannot grant Defendant Turnbow's Motion.**

As already stated, if the plaintiff meets his burden under the qualified immunity analysis, then the defendant bears the traditional burden of the movant for summary judgment. *Kapinski*, 964 F.3d at 905. Based on the same facts analyzed in Section B(i) above, when viewing these facts in the light most favorable to the nonmovant (i.e., Plaintiff), Defendant has not shown the absence of a genuine dispute of material fact regarding Plaintiff's claims of deliberate indifference under the Eighth Amendment. Instead, the evidence shows that by failing to act on clear information contained in the CBC Summary Review Report, Defendant Turnbow was deliberately indifferent to a substantial risk of harm to Plaintiff by the Burqueños and Los Padillas gangs, including (but not limited to) gang members Padilla and Garcia. Therefore, summary judgment would not be appropriate on any of Plaintiff's § 1983 claims.

**II.**    **Defendant Turnbow's immunity as a state governmental employee has not been waived under § 41-4-6 of the NMTCA; therefore, the Court must grant summary judgment in his favor on Count III.**

    **A. Applicable Law**

Under the NMTCA, a New Mexico "governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort," subject to certain specifically enumerated exceptions, or waivers of immunity. *See* N.M. Stat. Ann. § 41-4-4(A) (1978). One waiver of immunity exists for negligence claims against "public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." *See id.*,

§ 41-4-6. While it may be appropriately termed a "premises liability" statute, the waiver of immunity under § 41-4-6 applies to more than the operation or maintenance of the physical aspects of the building. It also includes safety policies necessary to protect people who use the building, as well as operation and maintenance of machinery, equipment, or furnishings. *See id.*; *Upton v. Clovis Mun. Sch. Dist.*, 141 P.3d 1259, 1261 (N.M. 2006) (citing *Castillo v. Santa Fe Cnty.*, 755 P.2d 48, 50 (N.M. 1988); *Leithead v. City of Santa Fe*, 940 P.2d 459, 462–463 (N.M. 1997)); *Bober v. N.M. State Fair*, 808 P.2d 614, 623 (N.M. 1991).

The New Mexico Supreme Court and Court of Appeals have explained some of the limits of the waiver of immunity contained in § 41-4-6. For instance, these courts have held that the waiver does not apply to mere negligent supervision, but the waiver can apply to negligent acts of employee supervision that endanger the general public. *Compare Espinoza v. Town of Taos*, 905 P.2d 718, 722 (N.M. 1995) (waiver did not exist where failure to supervise children in a playground did not render the premises unsafe) *with Leithead*, 940 P.2d at 462–463 (waiver existed for injury resulting from creation of dangerous condition to the general public in the operation of a swimming pool without an adequate number of trained lifeguards).

Pertinent to the present case, New Mexico courts have also opined on tort claims involving the operation of New Mexico prisons. For instance, in *Archibeque v. Moya* a prison administrator negligently failed to check a list of names before placing an inmate into an area of the prison with his known enemies. 866 P.2d 344, 347 (N.M. 1993). In that case, the New Mexico Supreme Court held that immunity was not waived when a governmental employee was "performing an administrative function associated with the

operation of the corrections system." *Id.* In addition to finding that the express language of § 41-4-6 did not cover administrative functions "affect[ing] a single inmate," the court also noted that the purpose of the NMTCA would be undermined if the state were to be found subject to liability "for virtually any mistake made during the administration of corrections facilities that results in injury to an inmate." *See id.* at 349.

In *Calloway v. New Mexico Department of Corrections*, the New Mexico Court of Appeals distinguished *Archibeque* by recognizing that the waiver of immunity applies to a state prison facility if defendants "knew or should have known that roaming gang members with a known propensity for violence had access to potential weapons in the recreation area, that such gang members created a dangerous condition on the premises of the penitentiary, and that the danger to other inmates was foreseeable." 875 P.2d 393, 398–399 (N.M. Ct. App. 1994). The distinction drawn between *Archibeque* and *Calloway* was that in *Calloway*, the defendants' actions resulted in a risk of harm to the general prison population, thus creating an unsafe condition on the prison premises. *See id.* at 399. The court in *Calloway* noted that *Archibeque*, on the other hand, did not involve a risk of harm to the general prison population, but rather an administrative decision affecting one inmate. *See id.*

Ultimately, New Mexico courts have recognized that, with respect to whether immunity is waived under § 41-4-6, "the critical question is whether the condition creates a potential risk to the general public." *See Espinoza*, 905 P.2d at 721. "[T]he reference to the 'general public' in *Espinoza* does not mean a condition that must be dangerous to the entire public, but rather, at least potentially, to the particular class of people that use the building or facility in question." *Upton*, 141 P.3d at 1264. "The key point in *Espinoza* is

21

that the negligence must be of a kind which makes the premises dangerous, or potentially so, to the affected public, the consumers of the service or the users of the building, including the plaintiff." *Id.* at 1265.

### B. Analysis[21]

As stated above, in order for Defendant Turnbow to be subject to a waiver of immunity as a state governmental employee under § 41-4-6, Plaintiff would need to show that Defendant Turnbow's failure to segregate him from members of the Burqueños or Los Padillas gang resulted in creation of a danger to all inmates or a general class of inmates, rather than a danger to Plaintiff only. *See, e.g., Archibeque*, 866 P.2d at 347 ("operation" and "maintenance" of penitentiary premises under § 41-4-6 "does not include the security, custody, and classification of inmates"); *see also Kreutzer v. Aldo Leopold High Sch.*, 409 P.3d 930, 943 (N.M. Ct. App. 2017) (absent additional facts such as a pattern of violence in a specific area of the premises, § 41-4-6 does not apply to a single student-on-student altercation occurring on school property); *Lessen v. City of Albuquerque*, 187 P.3d 179, 180–185 (N.M. Ct. App. 2008) (§ 41-4-6 did not apply to city's release of a pretrial detainee "inmate" with heroin withdrawal, given that the alleged risk was "specific to the City's treatment of decedent," rather than the general "population of released inmates").

---

[21] Although Plaintiff did not assert a waiver of immunity against Turnbow under § 41-4-6 in the First Amended Complaint, ECF No. 30, he now claims this waiver of immunity in his Response to Defendant Turnbow's Motion for Summary Judgment. *See* ECF No. 98 at 27–30. In his Reply, Defendant Turnbow argues that Plaintiff "cannot, for the first time in opposition to a motion for summary judgment, raise a new or materially different theory of recovery against a party from those pleaded in the complaint and bill of particulars." *See* ECF No. 126 at 25. For reasons contained in the Analysis section, given that Plaintiff's claims would be futile under any § 41-4-6 theory, the Court need not (and therefore will not) address this argument.

In the present case, however, Plaintiff has not shown that the harm he suffered was due to Defendant Turnbow's creation of a risk to a general class of inmates. To the contrary, the facts presented by Plaintiff show that even though Defendant Turnbow made the decision to place Plaintiff in the same pod as gang member Garcia, this was a decision related to the "security, custody, and classification" of an inmate (i.e., Plaintiff individually), rather than a decision creating a general risk of harm to the prison population or segment thereof. *See Archibeque*, 866 P.2d at 347. Therefore, the waiver of immunity under § 41-4-6 does not apply to Defendant Turnbow, even when the Court views the facts in the light most favorable to Plaintiff.[22]

In light of the facts and the law stated above, the Court finds that Plaintiff has not asserted an applicable waiver of governmental immunity for tort claims under the NMTCA, and therefore summary judgment in favor of Defendant Turnbow is appropriate as to all claims brought against him under the NMTCA (Count III of the First Amended Complaint).[23]

## CONCLUSION

For the foregoing reasons, Defendant Christopher Turnbow's Motion for Summary Judgment, filed on August 2, 2021, ECF No. 84, is hereby **GRANTED IN PART** and **DENIED IN PART**.

---

[22] Plaintiff has presented facts alleging that Defendant NMCD had a "policy, practice, or custom . . . not to require housing captains to review all of an inmate's safety concerns and cautions before making a housing assignment." *See* ECF No. 98 at 12. To the extent Plaintiff has made an argument regarding NMCD's policies, practices, or customs, this will be addressed in the Court's order on Defendant NMCD's Motion for Summary Judgment, ECF No. 81, if necessary.

[23] As already noted, Plaintiff has abandoned his argument that the NMTCA waiver of immunity for "law enforcement officers," N.M. Stat Ann. § 41-4-12 (1978), applies to this case. ECF No. 98 at 27. Therefore, the Court will not address it.

Summary judgment is granted in favor of Defendant Christopher Turnbow for all claims brought against him in Count III of the First Amended Complaint, ECF No. 30. In all other respects, including Defendant Turnbow's assertion of qualified immunity, the Motion is denied.

**IT IS SO ORDERED.**

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

24