**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

CHRISTOPHER CHAVEZ,

     Plaintiff,

v.                                                                    Civ. No. 1:20-cv-00812 MIS/LF

ABEL RENTERIA; JOHN DOE 1;
CHRISTOPHER TURNBOW;[1] CARLOS SAENZ;
DANIEL BLANCO, in his individual capacity;
ESTEVAN FLORES, in his official capacity; and
NEW MEXICO CORRECTIONS DEPARTMENT,

     Defendants.

**MEMORANDUM OPINION AND ORDER
ON DEFENDANT DANIEL BLANCO'S
MOTION FOR SUMMARY JUDGMENT (ECF NO. 80)**

     THIS MATTER is before the Court on Defendant Daniel Blanco's Motion for
Summary Judgment. ECF No. 80. Plaintiff filed his Response, and Defendant Blanco filed
his Reply. ECF Nos. 99, 124. Having considered the parties' submissions, the record,
and the relevant law, the Court will grant the Motion.

**PROCEDURAL BACKGROUND**

     This is a case brought by Plaintiff, Christopher Chavez, a former inmate housed at
the Southern New Mexico Correctional Facility ("Southern"), against Security Threat
Intelligence Unit ("STIU") coordinator Defendant Daniel Blanco ("Defendant Blanco") and

---

[1] Defendant is listed as "Christopher Turbow" in the First Amended Complaint. ECF No. 30. The
person that filed a waiver of the service of summons is "Christopher Turnbow," however. ECF No. 40. The
Court will refer to this Defendant as "Christopher Turnbow." The parties are advised to file the appropriate
documents to address this discrepancy, if necessary.

other employees of the New Mexico Corrections Department ("NMCD"). Plaintiff has also sued NMCD itself.

Pertinent to the present Motion, Plaintiff alleges that Defendant Blanco committed violations of the Eighth and Fourteenth Amendments to the United States Constitution compensable under 42 U.S.C. § 1983 (Count I), as well as torts within the New Mexico Tort Claims Act's waiver of immunity for law enforcement officers, N.M. Stat. Ann. § 41-4-12 (1978) (Count III).[2] *See* ECF No. 30, ¶¶ 78–92, 101–107.

In the First Amended Complaint, ECF No. 30, Plaintiff alleges that Defendant Blanco was deliberately indifferent to a substantial risk of Plaintiff being harmed by being housed with members of a dangerous prison gang known as the "Burqueños," and that, due to Defendant Blanco's indifference, a member of the Burqueños gang threw a cup of boiling water in Plaintiff's face, resulting in severe injury to Plaintiff. Plaintiff also alleges that as a "law enforcement officer" under the New Mexico Tort Claims Act ("NMTCA") (N.M. Stat. Ann. § 41-4-12 (1978)), Defendant Blanco negligently allowed Plaintiff to be housed with members of the Burqueños gang, resulting in the injury he sustained.

The present Motion, ECF No. 80, seeks summary judgment on all claims brought by Plaintiff against Defendant Blanco. Specifically, Defendant Blanco argues that he had no knowledge that Plaintiff faced a substantial risk of serious harm, and that he had insufficient personal involvement in Plaintiff's housing classification to be held liable for Plaintiff's constitutional claims. Defendant Blanco also argues that he is not a "law enforcement officer" under the NMTCA, and that therefore governmental immunity has

---

[2] The remaining claims, which are listed under Count II and Count IV of the First Amended Complaint, do not apply to Defendant Blanco. *See* ECF No. 30 at 17, 19.

not been waived for tort claims brought against him as an employee of the State of New Mexico acting within the scope of his duties.

In response to the Motion, Plaintiff argues there is sufficient evidence showing that Defendant Blanco was aware of, and deliberately indifferent to, a substantial risk of serious harm to Plaintiff from the Burqueños gang. Plaintiff also argues that New Mexico's governmental immunity from tort claims has been waived under N.M. Stat. Ann. § 41-4-6 (1978) (waiver of immunity for negligent operation of any "building, public park, machinery, equipment or furnishings").[3] The Court will address each of Defendant Blanco's relevant arguments, and Plaintiff's relevant responses thereto, in turn.

## FACTUAL BACKGROUND

The facts stated below are either undisputed or stated in the light most favorable to the nonmovant, for purposes of the present Motion:[4]

During the time period relevant to this lawsuit, Plaintiff was an inmate in the custody of NMCD. *See* ECF No. 80, UMF 1. While incarcerated, Plaintiff claimed on multiple occasions that he was at risk of violence from members of the Los Padillas and Burqueños gangs, due to past physical altercations with, and threats from, members of

---

[3] In the First Amended Complaint, Plaintiff pleaded that N.M. Stat. Ann. § 41-4-12 (1978) (law enforcement exception to the NMTCA) applies to his claims against Defendant Blanco. *See* ECF No. 30 at 18–19. In his Response to the present Motion, Plaintiff now states that he "agrees that, at the time of the incident, § 41-4-12 did not apply to corrections officers responsible for inmates post-conviction." ECF No. 99 at 27. Therefore, Plaintiff has abandoned his argument (if any) that § 41-4-12 applies to Defendant Blanco.

[4] For purposes of the Motion for Summary Judgment, the Court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. *See* Standard for Summary Judgment section.

these gangs. *See* ECF No. 99, UMFs GG, HH, LL. Since at least 2011,[5] Plaintiff has experienced gang-related violence from, or physical altercations with, members of these gangs, including violent assaults on Plaintiff in 2011 and 2017. *Id.* Also, in 2013, Plaintiff was placed in involuntary inmate protection due to information from confidential informants that younger members of the Burqueños gang had placed a "hit" on him, thus making him a target for future violence. *See id.* The above-mentioned safety concerns were clearly noted in Plaintiff's inmate file and were known to various officials within NMCD. *See id.* As of 2019 (the year of the injury claimed in this lawsuit), at least one notation in Plaintiff's inmate file reflected that this safety concern (i.e., the risk of violence from Los Padillas and Burqueños gang members) was unresolved. *See id.*, UMF II.

Prior to being transferred to Southern, where Plaintiff's injury occurred, Plaintiff was in the custody of NMCD at the Regional Diagnostic Facility, which is part of the Central New Mexico Correctional Facility. ECF No. 80, UMF 7. On July 23, 2019, he was transferred to Southern. *Id.* In general, when an inmate is transferred into the facility, Southern receives "transport orders" listing every inmate being transported into the facility, as well as the location of the facility from which the inmate is being transferred. *See id.*, UMF 10. The Housing Captain, Lieutenant, or other housing official then assigns each inmate to a specific pod based on the inmate's custody level when he arrives at the facility. *Id.*, UMF 11; ECF No. 99-1 at 4.

Within the NMCD system (including Southern), prison gangs pose a significant threat to inmate health and safety, due to their illicit activities such as drug trafficking,

---

[5] Plaintiff's file (as noted by a Deputy Warden at the Penitentiary of New Mexico) reflects that Plaintiff claimed "problems with Burqueño gang members" starting in 2008, and that he "has had to fight at every facility and has been physically assaulted because of this." *See* ECF No. 99-13 at 2.

extortion, and violence. *See* ECF No. 99, UMFs A–F. Prison gangs, including the Los Padillas and Burqueños gangs, exert power and control over the prison population through the use of intimidatory tactics and violence. *Id.* NMCD knows that these two specific gangs pose a threat to inmate health and safety, and NMCD has classified these gangs as "disruptive threat groups" ("DTGs"), which are groups involved in criminal activities within the prison facility. *See id.* The Burqueños are the largest DTG within the NMCD system. *Id.* NMCD has a policy encouraging inmates affiliated with DTGs to "dissociate" from, or renounce their affiliation with, these groups. *Id.*, UMFs J, K; ECF No. 99-6 at 2, 6. Dissociation from a DTG endangers the safety of an inmate, putting the inmate at risk of violent attacks by members of DTGs. ECF No. 99, UMF L; ECF No. 99-4 at 3; ECF No. 99-6 at 7–8.

Prior to the date of his alleged injury, Plaintiff notified an NMCD administrator that he wished to dissociate from the Burqueños. *Id.*, UMF LL(viii).[6] Plaintiff also wrote a letter to Defendant Abel Renteria, advising him that Plaintiff was in danger of violence from Michael Padilla, a suspected influential leader of the Burqueños and Los Padillas gangs, who did not want Plaintiff residing in his unit. *Id.*, UMFs NN, SS. Plaintiff's inmate file contained a notation that Michael Padilla was on Plaintiff's Inmate Safety Concerns List (also known as the "enemies" list), due to an attempted assault in 2012. *Id.*, UMF KK.

On August 5, 2019, inmate Joshua Garcia microwaved and then threw a cup of scalding water at Plaintiff, resulting in second-degree burns to Plaintiff's face, neck, chest,

---

[6] In his statement of material facts, Plaintiff states that he "attempted to formally renounce his association with the Burqueños," citing to his deposition transcript and an NMCD memorandum dated September 27, 2017. ECF No. 99 at 10. The documents reflect that Plaintiff told an NMCD administrator that he wished to dissociate from the Burqueños, not that he "attempted to formally renounce" his membership. ECF No. 99-8 at 10; ECF No. 99-13 at 2. Ultimately, this issue is immaterial.

and shoulders. *Id.*, UMFs OO, TT, ZZ. After the injury, Plaintiff was transported to a local hospital in Las Cruces, then airlifted to the University of New Mexico hospital. *Id.*, UMFs XX, YY. Plaintiff was burned so severely that he was unable to eat solid foods, and his weight dropped 40 pounds in about a month. *Id.*, UMF AAA. Plaintiff also experienced long-lasting changes to his skin, including increased sensitivity, changes in skin color, and pain in the injured areas. *Id.*, UMF BBB; ECF No. 99-8 at 7.

Inmate Garcia, who threw the scalding water at Plaintiff, is a suspected member of the Burqueños gang. *Id.*, UMF PP. Prior to Plaintiff's injury, Garcia's inmate file reflected a history of at least one other gang-related assault on a fellow inmate, as well as a history of violence. *Id.*, UMF QQ. Garcia had also warned Plaintiff before the assault that "Mike [Padilla] don't want you in this unit." *Id.*, UMF SS. During an interview after the assault, Garcia would not say anything, other than, "It had to be done, it was a long time coming." *Id.*, UMF CCC.

Defendant Blanco has been the Security Threat Intelligence Unit ("STIU") coordinator for Southern since February 2015. *See* ECF No. 80 at 1; *id.*, UMF 8. He supervises a staff of seven STIU officers, who work in gathering intelligence or information related to security threats. *Id.*, UMF 9. As the STIU coordinator, he is involved in reviewing inmate files and STIU information[7] to make housing recommendations for the safety of

---

[7] Based on the documents submitted by the parties, the "inmate files" referred to by Plaintiff consist of information in a computer database called "CMIS," and multiple personnel in the prison system have access to this computer database. *See, e.g.*, ECF No. 99-1 at 3 (describing CMIS and the types of information it contains, including whether an individual has enemies); *id.* at 4–5 (CMIS information contains suspected DTG affiliation and other information); *id.* at 3, 7 (housing official, STIU manager, and "everybody that has a log-in to CMIS" can view CMIS file). ECF No. 99-2 at 2 (CMIS screen showing inmate safety concern). On the other hand, the "STIU" information is a more sensitive file, kept in hardcopy form only, that follows an inmate from facility to facility and can take at least a week to reach the receiving facility. *See* ECF No. 99-1 at 5 (STIU is a "hard copy file" that follows the inmate and can take a week to week-and-a-

inmates. ECF No. 99, Response to UMF 12. Part of Defendant Blanco's role as STIU

coordinator is to gather intelligence in order to curb gang activities before they happen.

*Id.*, UMF N. This includes tracking and monitoring suspected members of DTGs, including

the Burqueños. *Id.*, UMF O. He is aware that there have been influential Burqueños

leaders at Southern. *Id.*, UMF P. Defendant Blanco admits that inmate-on-inmate violence

is a serious concern in the prison system. ECF No. 99-1 at 8. He also understands that

gang-related violence has led to serious injury or death, and he acknowledges that there

have been a few inmate-on-inmate assaults related to the Burqueños gang during his

tenure. *Id.*, UMFs G, H.

Despite the above, Defendant Blanco was not directly involved in deciding custody

or institutional assignments for Plaintiff. *See* ECF No. 80, UMF 12.[8] Although (as already

stated) it was Defendant Blanco's responsibility to make housing recommendations,

Plaintiff was not brought to Defendant Blanco's attention as having either an issue with

his housing assignment or a concern for his safety. ECF No. 80, UMF 13.[9] In fact,

---

half to reach the receiving institution); *id.* 7 (STIU staff and wardens have access to STIU file). This distinction is largely immaterial but is provided for context.

[8] The facts contained in other parts of the record suggest that at least one named Defendant in this cause of action *was* directly involved in deciding custody or institutional assignments for Plaintiff. *See, e.g.,* ECF No. 98-1 at 9 (Defendant Christopher Turnbow would have been the housing captain that made the housing assignment for Mr. Chavez prior to the date of Plaintiff's injury). However, for reasons stated in the present Order, the facts do not suggest that Defendant Blanco was directly involved. If necessary, the Court will address the claims against other defendants in one or more separate orders.

[9] Plaintiff claims that even if he was not "brought to Defendant Blanco's attention" by another employee, Defendant Blanco nevertheless reviewed Plaintiff's file and therefore knew that Plaintiff was at risk of harm. *See* ECF No. 99 at 3–4. However, a review of Defendant Blanco's deposition shows that he was testifying as to the STIU's general practice of reviewing inmate files, not his own personal review of Plaintiff's inmate file. *See* ECF No. 99-1 at 4. Defendant Blanco testified that as a matter of general practice, he or "the captain" will review inmate STIU files when new inmates arrive, but there is no evidence that Defendant Blanco actually reviewed Plaintiff's CMIS or STIU file prior to Plaintiff's injury. *See* ECF No. 99-1 at 5 (testifying about STIU's general practice); ECF No. 124-1 at 8 (Defendant Blanco does not recall reviewing Plaintiff's STIU file). Even when viewing the evidence in the light most favorable to Plaintiff, the

Defendant Blanco did not personally know of Plaintiff's incarceration at Southern until after the injury that forms the basis for this lawsuit. *Id.*, UMF 14.[10]

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure allows summary judgment when the evidence submitted by the parties establishes that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the nonmovant is required to put in the record facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52 (1986). A fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id.* at 248.[11]

The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988). Rather, the nonmovant has a responsibility

---

Court is unable to draw a reasonable inference that Defendant Blanco actually reviewed Plaintiff's file, much less that he disregarded a concern for Plaintiff's safety.

[10] Even when viewed in the light most favorable to Plaintiff, none of the evidence cited in response to UMF 14 would permit the Court to infer that Defendant Blanco personally knew of Plaintiff's incarceration (or a risk of harm to Plaintiff) prior to his claimed injury. *See* ECF No. 99-1 at 4–5 (referring to STIU and Defendant Blanco's general practices regarding inmate files, not knowledge of Plaintiff's file specifically).

[11] Several of the facts presented by the parties are immaterial. The Court acknowledges that some of the facts, although immaterial, are helpful for the purpose of providing background and context of the case. If material, the Court will apply these facts, as necessary, in the Analysis section of this Memorandum Opinion and Order.

to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [their] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (quoting *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998)) (internal quotation marks omitted).

It is not the Court's role to weigh the evidence or assess the credibility of witnesses in ruling on a motion for summary judgment. *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012). Rather, the Court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. *See Hunt v. Cromartie*, 526 U.S. 541, 551–52 (1999); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). However, summary judgment may nevertheless be granted where "the evidence is merely colorable, or is not significantly probative." *Liberty Lobby, Inc.*, 477 U.S. at 249–50.

**DISCUSSION**

I.   **Because there are no facts showing that Defendant Blanco was personally involved in an alleged constitutional violation, and because there are no facts showing that he was aware of a substantial risk of serious harm to Plaintiff prior to Plaintiff's injury, the Court must grant summary judgment in Defendant Blanco's favor on Count I.**

   **A. Applicable Law**

"Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment, as

9

applied to the states via the Fourteenth Amendment. *See Farmer*, 511 U.S. at 828; *Rhodes v. Chapman*, 452 U.S. 337, 344–45 (1981).

A cognizable Eighth Amendment claim contains an objective component (i.e., the inmate is incarcerated under conditions posing a substantial risk of serious harm)[13] and a subjective component (i.e., the prison official was deliberately indifferent to the inmate's safety). *Verdecia*, 327 F.3d at 1175. In order to meet the subjective component, the prison official must know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. Further, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official must also draw the inference. *Id.* Applying *Farmer*, the Tenth Circuit has created a three-part framework for the deliberate indifference standard: (1) The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) the official must actually draw that inference, and (3) the official must be aware of and fail to take reasonable steps to alleviate that risk. *See Perry v. Durborow*, 892 F.3d 1116, 1122 (10th Cir. 2018).

Under 42 U.S.C. § 1983, a plaintiff may seek money damages from government officials who have violated his or her constitutional or statutory rights. In order to successfully assert a § 1983 claim under the Eighth Amendment for failure to protect an inmate from serious harm, a plaintiff must show a specific defendant's personal

---

[13] In his Response, Plaintiff also argued that he suffered sufficiently serious harm (i.e., the objective component of the Eighth Amendment analysis). *See* ECF No.96 at 18–19. Given that Defendant did not assert Plaintiff's failure to meet the objective component in his Motion, ECF No. 86, and in light of Defendant's omission of this argument, the Court will not address the objective component. The Court finds that, for purposes of the present Motion, the parties agree that Plaintiff's alleged injury was sufficiently serious.

involvement or participation in the incident. *See Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996) (supervisory status alone is insufficient to assert a § 1983 claim; personal involvement is required) (citing *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996); *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim.").

### B. Analysis

Even viewing the facts in the light most favorable to Plaintiff, the Court is unable to infer that Defendant Blanco was personally involved in an alleged constitutional violation. Although Plaintiff makes a conclusory allegation in the First Amended Complaint that "Defendant Blanco was subjectively aware of the substantial risk of harm to Plaintiff's health and safety through his placement of Plaintiff" in conditions posing a danger to Plaintiff's safety, ECF No. 30, ¶ 91, and although Plaintiff argues that Defendant Blanco should have been aware of Plaintiff's risk of gang violence (for instance, because policy or practice required someone on the STIU staff to review Plaintiff's inmate file), the facts do not show that Defendant Blanco was actually aware that Plaintiff faced a substantial risk of serious harm due to gang violence. In the absence of facts showing actual knowledge of a risk to harm to Plaintiff, Defendant Blanco cannot be held liable for an Eighth Amendment violation. *See, e.g., Verdecia*, 327 F.3d at 1175–76 (evidence that Defendant "actually knew about a substantial risk of serious harm" is required, not simply facts showing negligence).

Defendant Blanco was one of multiple people that had access to Plaintiff's inmate and STIU files, but there are no facts that would permit the reasonable inference that he actually did review Plaintiff's inmate or STIU files prior to Plaintiff's injury. Although there

were several notes in Plaintiff's inmate file indicating that he was at risk of violence prior to his injury, there is no evidence that Defendant Blanco knew of this risk or was aware of facts that could allow him to draw an inference of the risk. The closest that Plaintiff comes to establishing Defendant Blanco's personal involvement is that Defendant Blanco was an STIU supervisor and that part of his job duties involved mitigating the risk of violence from the Burqueños gang. This fact, while perhaps evidence of negligence, would be insufficient to constitute an Eighth Amendment violation or permit relief under § 1983. *See, e.g., Wilson v. Falk*, 877 F.3d 1204, 1210 (10th Cir. 2017) (an official's failure to alleviate a significant risk that he should have perceived but did not actually perceive is insufficient to constitute cruel and unusual punishment under the Eight Amendment) (citing *Farmer*, 511 U.S. at 838); *Grimsley*, 93 F.3d at 679; *Bennett*, 545 F.2d at 1263.

Plaintiff has not put forth specific facts showing that Defendant Blanco was aware of a substantial risk of serious harm to Plaintiff, and Plaintiff has not put forth specific facts to refute Defendant Blanco's assertion that he was not directly involved in deciding custody or institutional assignments for Plaintiff. *See* Fed. R. Civ. P. 56(c)(1) (setting forth the procedure for establishing a genuine dispute of material fact).[15] Notably, Plaintiff has failed to offer sufficient facts permitting the Court to infer that Defendant Blanco actually knew of Plaintiff's incarceration at Southern, much less that Defendant Blanco

---

[15] In *Wilson*, the Tenth Circuit found that there was a genuine dispute of material fact as to whether three prison officials knew of the plaintiff's risk of harm from a violent gang, given that there was evidence that these officials interacted with the plaintiff in writing or verbally and were aware of facts permitting an inference that the plaintiff would be harmed in the future. *See Wilson*, 877 F.3d at 1211 (plaintiff spoke with defendant prison intake officials and told them that certain gang members "were after" him); *id.* at 1212–13 (plaintiff wrote to defendant case manager to request transfer to another facility due to risk from gang member with a knife, who had previously attacked plaintiff). None of the facts in the present case show that Defendant Blanco had the level of knowledge that the Defendants in *Wilson* possessed, even when viewing the facts in the light most favorable to Plaintiff.

disregarded a substantial risk to Plaintiff's safety. In light of the above facts and applicable law, the Court must grant summary judgment in favor of Defendant Blanco on Plaintiff's Eighth and Fourteenth Amendment claims under § 1983 (Count I of the First Amended Complaint).[16]

## II.   Defendant Blanco's immunity as a state governmental employee has not been waived under § 41-4-6 of the NMTCA; therefore, the Court must grant summary judgment in his favor on Count III.

### A.  Applicable Law

Under the NMTCA, a New Mexico "governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort," subject to certain specifically enumerated exceptions, or waivers of immunity. *See* N.M. Stat. Ann. § 41-4-4(A) (1978). One waiver of immunity exists for negligence claims against "public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." *See id.*, § 41-4-6. While it may be appropriately termed a "premises liability" statute, the waiver of immunity under § 41-4-6 applies to more than the operation or maintenance of the physical aspects of the building. It also includes safety policies necessary to protect people who use the building, as well as operation and maintenance of machinery, equipment, or furnishings. *See id.*; *Upton v. Clovis Mun. Sch. Dist.*, 141 P.3d 1259, 1261 (N.M. 2006) (citing *Castillo v. Santa Fe Cnty.*, 755 P.2d 48, 50 (N.M. 1988); *Leithead v.*

---

[16] It does not appear that Plaintiff has made a claim for supervisory liability against Defendant Blanco under § 1983 (*see* ECF No. 30, ¶¶ 78–91); however, even assuming so, Plaintiff would fail to meet the summary judgment standard for supervisory liability as well. *See, e.g., Cox v. Glanz*, 800 F.3d 1231, 1248–49 (10th Cir. 2015) (the requisite showing of an affirmative link between a supervisor and alleged constitutional injury includes (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind). Based on the facts presented, Plaintiff fails to establish any of these elements with respect to Defendant Blanco.

*City of Santa Fe*, 940 P.2d 459, 462–463 (N.M. 1997)); *Bober v. N.M. State Fair*, 808 P.2d 614, 623 (N.M. 1991).

The New Mexico Supreme Court and Court of Appeals have explained some of the limits of the waiver of immunity contained in § 41-4-6. For instance, these courts have held that the waiver does not apply to mere negligent supervision, but the waiver can apply to negligent acts of employee supervision that endanger the general public. *Compare Espinoza v. Town of Taos*, 905 P.2d 718, 722 (N.M. 1995) (waiver did not exist where failure to supervise children in a playground did not render the premises unsafe) *with Leithead*, 940 P.2d at 462–463 (waiver existed for injury resulting from creation of dangerous condition to the general public in the operation of a swimming pool without an adequate number of trained lifeguards).

Pertinent to the present case, New Mexico courts have also opined on tort claims involving the operation of New Mexico prisons. For instance, in *Archibeque v. Moya*, a prison administrator negligently failed to check a list of names before placing an inmate into an area of the prison with his known enemies. 866 P.2d 344, 347 (N.M. 1993). In that case, the New Mexico Supreme Court held that immunity was not waived when a governmental employee was "performing an administrative function associated with the operation of the corrections system." *Id.* In addition to finding that the express language of § 41-4-6 did not cover administrative functions "affect[ing] a single inmate," the court also noted that the purpose of the NMTCA would be undermined if the state were to be found subject to liability "for virtually any mistake made during the administration of corrections facilities that results in injury to an inmate." *See id.* at 349.

14

In *Calloway v. New Mexico Department of Corrections*, the New Mexico Court of Appeals distinguished *Archibeque* by recognizing that the waiver of immunity applies to a state prison facility if defendants "knew or should have known that roaming gang members with a known propensity for violence had access to potential weapons in the recreation area, that such gang members created a dangerous condition on the premises of the penitentiary, and that the danger to other inmates was foreseeable." 875 P.2d 393, 398–399 (N.M. Ct. App. 1994). The distinction drawn between *Archibeque* and *Calloway* was that in *Calloway*, the defendants' actions resulted in a risk of harm to the general prison population, thus creating an unsafe condition on the prison premises. *See id.* at 399. The court in *Calloway* noted that *Archibeque*, on the other hand, did not involve a risk of harm to the general prison population, but rather an administrative decision affecting one inmate. *See id.*

Ultimately, New Mexico courts have recognized that, with respect to whether immunity is waived under § 41-4-6, "the critical question is whether the condition creates a potential risk to the general public." *See Espinoza*, 905 P.2d at 721. "[T]he reference to the 'general public' in *Espinoza* does not mean a condition that must be dangerous to the entire public, but rather, at least potentially, to the particular class of people that use the building or facility in question." *Upton*, 141 P.3d at 1264. "The key point in *Espinoza* is that the negligence must be of a kind which makes the premises dangerous, or potentially so, to the affected public, the consumers of the service or the users of the building, including the plaintiff." *Id.* at 1265.

### B. Analysis[17]

As stated above, in order for Defendant Blanco to be subject to a waiver of immunity as a state governmental employee under § 41-4-6, Plaintiff would need to show that Defendant Blanco's failure to segregate him from members of the Burqueños or Los Padillas gang resulted in creation of a danger to all inmates or a general class of inmates, rather than a danger to Plaintiff only. *See, e.g., Archibeque*, 866 P.2d at 347 ("operation" and "maintenance" of penitentiary premises under § 41-4-6 "does not include the security, custody, and classification of inmates"); *see also Kreutzer v. Aldo Leopold High Sch.*, 409 P.3d 930, 943 (N.M. Ct. App. 2017) (absent additional facts such as a pattern of violence in a specific area of the premises, § 41-4-6 does not apply to a single student-on-student altercation occurring on school property); *Lessen v. City of Albuquerque*, 187 P.3d 179, 180–185 (N.M. Ct. App. 2008) (§ 41-4-6 did not apply to city's release of a pretrial detainee "inmate" with heroin withdrawal, given that the alleged risk was "specific to the City's treatment of decedent," rather than the general "population of released inmates").

In the present case, however, Plaintiff has not shown that the harm he suffered was due to Defendant Blanco's creation of a risk to a general class of inmates. To the contrary, the facts presented by Plaintiff show that even if Defendant Blanco had been

---

[17] Although Plaintiff did not assert a waiver of immunity against Blanco under § 41-4-6 in the First Amended Complaint, ECF No. 30, he now claims this waiver of immunity in his Response to Defendant Blanco's Motion for Summary Judgment. *See* ECF No. 99 at 27–30. In his Reply, Defendant Blanco argues that Plaintiff "cannot, for the first time in opposition to a motion for summary judgment, raise a new or materially different theory of recovery against a party from those pleaded in the complaint and bill of particulars." *See* ECF No. 124 at 22. For reasons contained in the Analysis section, given that Plaintiff's claims would be futile under any § 41-4-6 theory, the Court need not (and therefore will not) address this argument.

personally involved (or should have been involved) in the decision to place Plaintiff in the same pod as gang member Joshua Garcia or another gang member, this would have been a decision related to the "security, custody, and classification" of an inmate (i.e., Plaintiff individually), rather than a decision creating a general risk of harm to the prison population or segment thereof. *See Archibeque*, 866 P.2d at 347. Therefore, the waiver of immunity under § 41-4-6 does not apply to Defendant Blanco, even when the Court views the facts in the light most favorable to the Plaintiff.[18]

In light of the facts and the law stated above, the Court finds that Plaintiff has not asserted an applicable waiver of governmental immunity for tort claims under the NMTCA, and therefore summary judgment in favor of Defendant Blanco is appropriate as to all claims brought against him under the NMTCA (Count III of the First Amended Complaint).[19]

## CONCLUSION

For the foregoing reasons, Defendant Daniel Blanco's Motion for Summary Judgment, filed on August 2, 2021, ECF No. 80, is hereby **GRANTED**. Summary judgment is therefore granted in favor of Defendant Daniel Blanco as to all claims brought against him.

---

[18] Plaintiff has presented facts alleging that NMCD's policies were the cause of his injuries. *See* ECF No. 99 at 8 ("[T]here were no policies or procedures dictating when the STIU files were reviewed after receipt."). To the extent Plaintiff has made an argument regarding NMCD's policies, practices, or customs, this will be addressed in the Court's order on Defendant NMCD's Motion for Summary Judgment, ECF No. 81, if necessary.

[19] As already noted, Plaintiff has abandoned his argument that the NMTCA waiver of immunity for "law enforcement officers," N.M. Stat Ann. § 41-4-12 (1978), applies to this case. ECF No. 99 at 27. Therefore, the Court will not address it.

**IT IS SO ORDERED.**

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE